LEANDER J. HARRISON v. ROBERT LEE LEWIS

No. 7227SC303

(Filed 28 June 1972)

1. Automobiles §§ 62, 83— striking pedestrian — negligence — contributory negligence

In an action to recover for personal injuries sustained by plaintiff pedestrian when he was struck by defendant's automobile, the evidence was sufficient to support jury findings of negligence and contributory negligence and that the negligence of each party was a proximate cause of plaintiff's injuries.

2. Negligence § 10— last clear chance — pleading — burden of proof

Plaintiff must plead the doctrine of last clear chance in order to invoke such doctrine and has the burden of proof on such issue.

Harrison v. Lewis

**3. Automobiles § 89— submission of last clear chance**

The doctrine of last clear chance was properly submitted to the jury in an action by a pedestrian to recover for personal injuries sustained when he was struck by defendant's automobile while attempting to cross the highway, where the evidence would support a jury finding that if defendant had maintained a proper lookout in his direction of travel, he could have observed the plaintiff in the act of crossing the highway at a time when it should have been apparent to him that plaintiff could not save himself, and at which time defendant could have avoided striking plaintiff by merely turning slightly to his left.

**4. Automobiles § 46— opinion testimony as to speed — weight**

The weight to be given opinion testimony as to the speed of defendant's automobile was for the jury.

APPEAL by defendant from *Thornburg, Judge,* 20 September 1971 Session of Superior Court held in CLEVELAND County.

Plaintiff, Leander J. Harrison, instituted this civil action to recover damages for personal injuries allegedly caused by defendant's negligently striking plaintiff, a pedestrian, with his automobile on 13 April 1969.

In his complaint, plaintiff alleged that defendant was negligent in that he drove at an excessive speed; failed to keep a proper lookout; failed to yield the right of way to plaintiff, and failed to reduce his speed, failed to sound his horn or give other warning to plaintiff, and failed to take any evasive action to avoid striking the plaintiff, when defendant had a clear and unobstructed view of the plaintiff as he was crossing the highway a distance of several hundred feet before reaching the plaintiff. The plaintiff further alleged, "defendant was negligent in that defendant saw or should have seen the plaintiff in the defendant's lane of travel from a distance of several hundred feet; and, that the defendant knew or should have known that the plaintiff could not extricate himself from his position, and although the defendant had a sufficient time and opportunity to avoid striking the plaintiff, he failed to reduce his speed, or give warning, or take evasive action and did strike the plaintiff."

Defendant in his answer denied negligence and pleaded plaintiff's contributory negligence as a bar to any recovery by him. As a further defense, defendant asserted that he was faced with a sudden emergency at the time of the accident, which

was not created by any negligence on his part, and that he did everything he could in the exercise of reasonable care to avoid any injury to the plaintiff.

Both parties introduced evidence. Defendant moved for a directed verdict at the close of all the evidence and this motion was denied. The court submitted issues of (1) negligence, (2) contributory negligence, (3) last clear chance, and (4) damages. The jury answered the first three issues in the affirmative and awarded damages in the sum of $10,000. Whereupon, defendant moved for judgment notwithstanding the verdict or for a new trial; both of these motions were denied. From a judgment in accord with the verdict, defendant appeals.

*John D. Church for plaintiff-appellee.*

*Van Winkle, Buck, Wall, Starnes and Hyde, by Roy W. Davis, Jr., for defendant-appellant.*

BROCK, Judge.

Defendant assigns as error the denial of his motion for judgment notwithstanding the verdict. He argues that the motion should have been granted in view of the jury's finding that plaintiff was contributorily negligent and that the issue of last clear chance does not arise on the evidence in this case. In other words, the question for determination is whether there was sufficient evidence, considered in the light most favorable to plaintiff, to require submission of the issue of last clear chance to the jury. *Clodfelter v. Carroll,* 261 N.C. 630, 135 S.E. 2d 636; *Wade v. Sausage Co.,* 239 N.C. 524, 80 S.E. 2d 150.

The plaintiff's evidence tends to show the following facts:

On 13 April 1969 plaintiff, a man 74 years of age, and his wife went to visit a neighbor Paul Price, who lived across U.S. Highway 74 from plaintiff's house. At approximately 8:30 p.m., the plaintiff and his wife decided to return to their house in order to receive an expected phone call from their son. They had to walk from Mr. Price's house, cross U. S. Highway 74, and then proceed down N. C. Highway 120.

Mrs. Harrison testified that when she and the plaintiff reached the edge of Highway 74, the main traveled route at that time between Forest City and Shelby, "we stopped to see— looked both ways to see if a car was coming and there was one

coming from towards Shelby [their left facing Highway 74] and we stood there until it got past."

"We had a clear vision of Highway 74 to our right [west, towards Forest City] for 150 or 200 yards. Highway 74, from the point where we were standing back to the west towards Forest City, was pretty straight there. It might have been up-grade just a little from where we was there up to the top of the knoll. The top of the knoll . . . is where this car [defendant's] came over the hill. That is 150 yards from the point where we were standing."

"Highway 120 comes into Highway 74 at or near the point at which Mr. Harrison and I were standing. (Highway) 120 comes in at the opposite side from where we was at."

"After we observed a car coming from the east from Shelby which passed the point at which we were standing, I looked both ways and I told him [plaintiff] there wasn't a car in sight, and we would go, and we started across and got about middleways of the highway and I saw the lights of a car com-ing over the hill above us from Forest City from the west. The lights were about 150 yards away when I saw them. After I observed the lights, I told my husband to 'let's hurry'; that there was a car coming over the hill, and we got going and got a little faster so that we could get across and the car was coming pretty fast too."

"When I stepped off the paved portion of 74, Mr. Harri-son was just to my right about a step behind me. The approach-ing lights just kept coming down the road from the time we were in the center of the road until the time we reached the edge of Highway 74. It didn't blow no horn that I heard or didn't swerve or nothing to keep from hitting him [plaintiff]."

"I observed the car from the time it came over the hill until it hit him. This was 2 or 3 seconds."

Mrs. Harrison further testified that in her opinion the defendant's car would be "making at least 60 m.p.h." and that there was "plenty of light from those lights on the poles to go across the road."

Mrs. Harrison also related, in part, "The vehicle I observed approaching from the west just kept coming until it hit him [plaintiff]. I couldn't tell that it made any decrease in speed.

When we were about in the middle of the road and I said 'hurry up' . . . . I was trying to get across and he [plaintiff] was right behind me . . . coming on behind me. I quickened my pace. Mr. Harrison kept . . . got a little faster too when he saw the car."

"Mr. Harrison was struck above the intersection with Highway 120 on the west side. Three or four feet above it. . . ."

"It just looked like the car picked up Mr. Harrison and laid him down on the pavement. His head was towards the west, towards Forest City, and his feet right straight down the highway towards Shelby. After the car struck him, his body was lying right there on the edge of the pavement."

As a result of the accident, Mr. Harrison suffered a concussion and leg injuries. The physical condition of the plaintiff before the accident took place on 13 April 1969 was good; "he could walk good." His memory and mental faculties prior to the collision were good. He had one eye (right), but he had good vision from that eye and his ability to hear before the accident was good. Since the accident, Mr. Harrison "doesn't walk good and he don't remember."

The testimony of Mrs. Harrison further disclosed that her husband had on green pants and a light green shirt at the time of the accident. "My husband's shirt was long sleeved and he didn't have on no coat." She was wearing "kind of a light dress with a pink sweater."

Defendant's evidence is to this effect: At the time and place in question, he was driving from Union Mills, after completing his Sunday church work, to Raleigh, North Carolina.

The scene of the accident was on U. S. Highway 74 approximately 1 and ½ miles west of the center of Mooresboro on U. S. 74 at its intersection with N. C. 120. Highway 74 is 22 feet wide.

Defendant narrated the events, in part, as follows:

"On the evening of April 13, 1969, I was operating a small 1961 Cadillac which I own. I was driving the car on Highway 74 at the time of the wreck. . . . I was driving on the right-hand side of the road.

"As I approached the scene of this accident, I drove over the rise of a hill. I was operating the car approximately 55

m.p.h. When I came over the rise, I saw two other . . . met two other automobiles. They were headed in the opposite direction, going towards Rutherfordton, with reference to the way I was headed. I was going toward Shelby. My lights were on dim at the time I came over the hill. They were dim when I came across the hill because the autotmatic eye on my car had dimmed them when I was meeting this other traffic. Both these two cars I was meeting at the hillcrest were close together and they passed me.

"After they passed me, I noticed the next automobile. It was close enough for my lights not to brighten up . . . near the intersection of 120 there. I noticed something unusual about the lights from that car, it looked like they were bobbing and weaving. I immediately taken my foot off the accelerator. The other car passed me.

"Whenever the last car passed me, immediately after he passed, my lights brightened back up. At this point, I saw something ahead of me. I saw the bottom part of a woman's dress. This figure before me was in approximately the middle of my lane. When I saw the figure of the woman on the road or the bottom part of a woman's figure on the road, I began to pull to the middle of the highway. Then I saw her get off on the dirt part of the highway and I felt a rub up against the side of the car. The rub felt like it was on the back, behind the back door on the right-hand side of the car. My car was straddling the center line when I felt this rub."

"I was about 50 paces from the point where this wreck occurred whenever my lights flashed on and I was able to see this figure of the woman."

"At this point, I had never seen more than one person on the road."

The defendant then pulled his car off the road across the intersection and parked. After walking back to the scene of the collision, he was "surprised" when he saw Mr. Harrison. Later defendant found "one little mark on the very back fender" of his car.

Highway Patrolman J. R. Reid testified that he was not aware of any lighting extending over the area of the intersection from any lights at the scene. He stated, "There was no lighting there that had any bearing as far as lighting the high-

way was concerned in my opinion." He further testified that Mr. Harrison had on a dark coat and a dark pair of pants; that he did not find any marks or indications on the pavement of tires or anything else; and that no visible damage or unusual condition was found on defendant's 1961 Cadillac.

[1] There appears to be ample evidence to support the findings of the jury that the defendant was negligent, that the plaintiff was contributorily negligent, and that each of the parties' negligence was a proximate cause of plaintiff's injury. Therefore, unless there was error by the trial judge in submitting the issue of the last clear chance to the jury, the judgment should be affirmed.

Defendant contends that the evidence, when considered in the light most favorable to the plaintiff, will not invoke the doctrine of last clear chance on behalf of the plaintiff; we do not agree.

[2] It is true that to invoke the doctrine of the last clear chance the plaintiff must plead it and the burden of proof is upon him. *Exum v. Boyles,* 272 N.C. 567, 158 S.E. 2d 845. In the present case the submission of the issue of the last clear chance was supported by the pleadings and by competent evidence introduced by plaintiff, even though evidence to the contrary was introduced by the defendant. Clearly, the contradictions were for jury determination.

In *Clodfelter v. Carroll, supra,* our Supreme Court restated the necessary elements of the doctrine of last clear chance, as follows:

"Where an injured pedestrian who has been guilty of contributory negligence invokes the last clear chance . . . doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous posi-

tion and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him." In *Exum v. Boyles, supra,* the North Carolina Supreme Court stated, ". . . 'original negligence' of the defendant is sufficient to bring the doctrine of the last clear chance into play if the other elements of that doctrine are proved."

Defendant argues that plaintiff was an able-bodied man and had time to move from the middle of the road to the shoulder, a distance of 10 or 11 feet, while the defendant's car traveled 150 yards. However, this argument ignores the fact that plaintiff's evidence, if considered true, tends to show that, when Mrs. Harrison saw the defendant's lights while they were in the middle of the road, "we got going and got a little faster." Mrs. Harrison further testified that the time in which she saw the car coming until it hit her husband, the plaintiff, was 2 or 3 seconds. From this testimony, it appears that, after plaintiff became aware of the approaching car, he had very limited time within which to extricate himself from the pavement and to safety. The plaintiff's evidence also tends to show that defendant's lane of travel on U. S. 74 was straight, that the highway was lighted, that he must or should have seen the plaintiff and his wife in the middle of the road for a distance of 150 or more yards, that he had time to apply his brakes, and that he had room to turn to his left to avoid striking plaintiff.

Further, plaintiff's evidence, if considered true, renders defendant liable on "original" negligence by his failure to maintain a proper lookout, failure to reduce speed, and failure to turn aside from his straight line of travel in order to avoid striking the plaintiff when the defendant should have seen the plaintiff, if the defendant was maintaining a proper lookout from a distance of several hundred feet. "The approaching lights just kept coming down the road from the time we were in the center of the road until the time we reached the edge of Highway 74. It didn't blow no horn that I heard or didn't swerve or nothing to keep from hitting him."

[3] The defendant owed the plaintiff, and all other persons using the highway, the duty to maintain a lookout in the direction of the defendant's travel. Assuming the evidence to be true, had the defendant maintained such a lookout, he could have

observed the plaintiff in the act of crossing the highway, at a time when it should have been apparent to the defendant that plaintiff could not save himself, but at which time the defendant would have avoided striking Harrison by merely turning slightly to his left (plaintiff was only 2 or 3 feet from edge of the pavement). This is sufficient to bring the doctrine of the last clear chance into operation. It was a question for the jury whether these were or were not the facts of the case. The jury has resolved the disputed facts in favor of the plaintiff.

[4] Defendant assigns as error that plaintiff's wife was allowed to relate her opinion of the speed of defendant's vehicle. We consider that defendant's argument on this question is addressed primarily to the weight to be given the testimony. The argument, however, is for the jury and we feel certain defendant availed himself of that opportunity. This assignment of error is overruled.

Defendant assigns as error numerous portions of the judge's charge to the jury. We do not deem it necessary to discuss these seriatim. We have examined the charge as a whole and conclude that it contains no prejudicial error.

No error.

Judges HEDRICK and VAUGHN concur.