JAMES A. THACKER, ADMINISTRATOR OF THE ESTATE OF VICKI LYNN THACKER v. WALLACE G. HARRIS AND REBECCA SUE HARRIS

No. 7415SC234

(Filed 19 June 1974)

1. Automobiles § 89— sufficiency of evidence of last clear chance

Where plaintiff's evidence would permit but not compel the jury to find that his intestate was walking along the paved portion of a highway just before dark, that during the time defendant drove her car a distance of 900 feet intestate was in defendant's line of vision directly in front of her with nothing to obstruct the view, that there was no approaching traffic or other obstruction to interfere with defendant's opportunity to turn her car toward the center of the street to avoid hitting plaintiff's intestate, and that intestate was not aware of the automobile's approach until the instant of impact, the issue of last clear chance should have been submitted to the jury.

2. Rules of Civil Procedure §§ 8, 15— pleading last clear chance — amendment of complaint

Though plaintiff did not serve a reply alleging last clear chance or use those exact words in his complaint, the complaint was sufficiently particular to give notice that plaintiff intended to offer proof on that issue, and, in any event, the complaint could be amended to conform to the evidence, even after judgment. G.S. 1A-1, Rule 15(b).

APPEAL by plaintiff from *Hall, Judge,* 12 November 1973 Session of Superior Court held in ALAMANCE County.

Action for wrongful death. Plaintiff's intestate, Vicki Lynn Thacker (Vicki), died as a result of injuries received about 6:50 p.m. on 9 November 1970 when she was struck by an automobile driven by defendant, Rebecca Sue Harris, owned by Rebecca's

father, defendant Wallace G. Harris, as a family purpose vehicle. The accident occurred on Williamson Street in Burlington, N. C. Vicki, age 17, and a girl companion of the same age, Pat Cobb, were walking on the right-hand side of Williamson Street, proceeding toward its intersection with Whitsett Street. Defendant, Rebecca Sue Harris, 18 years old, driving her father's 1960 Oldsmobile, entered Williamson Street from the driveway of her home at 426 Williamson Street, turned to the right, and then proceeded along Williamson Street toward Whitsett Street in the same direction that Vicki and her companion were walking. She had driven approximately 900 feet when her automobile struck Vicki, knocking her to the ground and inflicting the injuries which caused her death.

In summary and as pertinent to this appeal, plaintiff's evidence showed: Williamson Street is a two-lane paved street without sidewalks, the pavement being 21 to 22 feet wide. On the right-hand side of Williamson Street, proceeding in the direction toward the Whitsett Street intersection, there is a grassed dirt shoulder one to one and a half feet wide, then a ditch, which "is maybe a foot deep." On the other side of the ditch at the point where the accident occurred there is "an embankment, maybe five feet high," described by the investigating officer as "sort of a raised yard, gradually raised." From the point where the Harris driveway enters Williamson Street to the point where the accident occurred, Williamson Street is straight, and while there is a slight incline, there is nothing to obstruct the view. At the time of the accident, the weather was clear and the pavement was dry. When the investigating officer arrived a few minutes after the accident, it "had just barely gotten dark." There are street lights in the area, the nearest being 200 or 250 feet away, and another at the corner of Whitsett and Williamson Streets, which is 491 feet away. The speed limit on Williamson Street is 35 miles per hour.

Vicki and her companion, Pat Cobb, were walking side by side, Pat walking on the grassed shoulder and Vicki on the pavement. Vicki was wearing a navy blue all-weather coat. Her hair was "real blond" and she did not wear a hat.

Pat Cobb testified:

"Vicky [sic] and I were walking along talking about my boy friend and getting married and she thought I was too young. I don't recall what type of clothing I had on,

but I imagine it was dark clothing. The all-weather coat
I mentioned that Vicky had on was about knee-length.

"As to how far she was walking away from the right
edge, just the length of a person. I mean the width of a
person. I would say that was two or three feet. I didn't
see or hear any car. I was facing in the other direction from
where the car came. This car came up behind us in the same
direction we were walking. The first thing I noticed, I heard
a thug [sic] and I looked up and saw Vicky looked like she
was flying, not flying but twisted through the air. Not like a
person running in a hurry and fell, like the car had hit her
up in the air. Then she fell on the grass."

Plaintiff's witness, Jack Sheets, who had just arrived for
a visit to the Coleman residence, which was across the street
and approximately 125 feet up toward Whitsett Street from
where the two girls were walking, testified:

"I had just gotten out of my car, just parked. It
wasn't quite dark enough for my lights to be on. I had the
parking lights on. . . . Before the accident, when I pulled
up to stop at the Coleman house, I saw Vicky Thacker and
Mrs. Cobb walking up the street. I knew them. I saw them
walking up the street towards me. As to where they were
walking with reference to the shoulder and the pavement,
there is no curb and gutter on that street, and you walk in
the side ditch or on the street. The two girls were walking
side by side. It couldn't help but one of them be on the pave-
ment. As to which one was on the pavement, Mrs. Cobb was
what you might say on the yard side or the inside and Miss
Thacker was on the road side. When I saw them, I threw
my hand up at them. I saw a car behind them. When I saw
that car behind them, it was several more houses down the
road, but it was heading in the same direction they were
and towards me. It was several houses on the other side of
them. When I say several, I mean approximately three
houses. I remember seeing the car coming, but I don't
remember paying that much attention to the car. It was
a few houses back up the road behind the two girls. I could
see that all right. As to whether it had lights on or not, I
would hate to say under oath whether it had lights on or
not, but when I pulled up it was not dark enough for my
headlights to be needed.

Thacker v. Harris

"I saw the two girls. I waved and they waved back and at the time I saw the car several houses behind. Then I turned to go toward the front door of the Coleman house and as I approached the front steps I heard the collision and as I turned toward the collision I saw Miss Thacker going through the air. When she was thrown through the air, it was more of a sideways throw than forward, more or less veered off of the car.

" . . . . There was no other traffic going in the same direction I was and no other car on the street. I was parked."

Defendant Rebecca Sue Harris testified:

"I left my home at quarter of seven. As I proceeded along there, I was driving on the right-hand side of the road. It is a two-lane road. I had my lights on. That road is straight. It is a straight road. As to the contour of it, there is a slight grade or hill. It is a hill. As to where the vehicle was when it collided with Vicky Thacker, it was at the top of the grade. As I drove along there, my speed was approximately thirty miles per hour.

" . . . . I left my home and I started up Williamson Street, and all of a sudden I felt a bump and I heard a noise on the right of my car. I immediately stopped and got out of my car and ran around to the right-hand side of the road because I didn't know what had happened, and I saw Vicky and Pat in the ditch. Vicky was laying down. As to how far she was from the edge of the road, the road levels off and then the ditch. I don't know how far my automobile traveled after I felt the bump. I stopped in the middle of the road. I would say about a hundred feet away from where she was lying.

"I saw Mrs. Cobb. As to how she was dressed, all I remember is dark clothing. I saw Vicky Thacker, and she was also wearing dark clothing. They both had on slacks and coats."

On cross-examination, Rebecca Harris testified:

"I know this street and know there is quite a bit of congestion on the street. There is a school there. There is congestion on both sides of the street. My radio was not playing. Immediately before this accident occurred I was

Thacker v. Harris

driving. I was looking straight ahead. It is my understanding that these people were on the right-hand edge of the road. . . . I had my lights on, and they were working. With my lights shining on a straight road, no hill, and when I was in a distance of say two hundred, I never saw anybody. I never did see anybody. There was no traffic coming or meeting me and no blinding lights in my eyes, just the street light behind me. I don't know how far that street light was behind me. I was about one hundred feet behind the scene of the accident. It was close enough that the street light came to my attention. I had my headlights on and the street light was also shining there at the time of this accident. I didn't ever blow my horn. I never applied my brakes until after this occurred. I never turned aside to avoid hitting the girl. As to Vicky making any sudden move when I passed, I have no idea if she did. I never saw her. I can't say how close to the edge of the pavement I was driving when I was coming down along the street. I know that I was on my side of the road. I don't know how close to the edge of the pavement I was."

Issues of negligence, contributory negligence, and damages were submitted to the jury. The jury answered the first two issues in the affirmative, and from judgment that plaintiff recover nothing of defendants, plaintiff appealed.

*Dalton & Long by W. R. Dalton, Jr. for plaintiff appellant.*

*Sanders, Holt & Spencer by Frank A. Longest, Jr., and Emerson T. Sanders for defendant appellees.*

PARKER, Judge.

There was ample evidence to require submission of issues of negligence and contributory negligence. The question presented is whether plaintiff's tendered issue of last clear chance should also have been submitted. We hold that it should.

Discussing the doctrine of last clear chance, Justice Lake, writing the opinion of our Supreme Court in *Exum v. Boyles*, 272 N.C. 567, 158 S.E. 2d 845, after approving the holding but disapproving some of the language of earlier decisions, said:

"In each of those cases, it is clear that what the court held was that to bring into play the doctrine of the last clear chance, there must be proof that after the plaintiff

had, by his own negligence, gotten into a position of help-less peril (or into a position of peril to which he was in-advertent), the defendant discovered the plaintiff's helpless peril (or inadvertence), or, being under a duty to do so, should have, and, thereafter, the defendant, having the means and the time to avoid the injury, negligently failed to do so."

[1] Applying these principles to the evidence in the present case and viewing that evidence in the light most favorable to the plaintiff, the jury could find: During the entire time defend-ant driver drove her car 900 feet along Williamson Street, plain-tiff's intestate and her companion were in the driver's line of vision directly in front of her with nothing between them to obstruct her view. Although night was approaching, it was not yet dark, and although the two pedestrians wore dark clothing, they were clearly visible to an acquaintance, who had no diffi-culty recognizing them without use of headlights on his car and at a distance of 125 feet. Plaintiff's intestate was walking, with her back to the direction from which defendant driver was ap-proaching, on the paved portion of the street some two to three feet from the right-hand edge of the pavement and in defend-ant driver's lane of travel. Neither plaintiff's intestate nor her companion were aware of the automobile's approach until the instant of impact. There was no approaching traffic or other ob-struction to interfere with defendant driver's opportunity to turn her car toward the center or left-hand portion of the street in order to avoid hitting plaintiff's intestate.

Defendant driver owed to plaintiff's intestate, and to all others using the street on which she was driving, the duty to maintain a lookout in the direction in which she was traveling and to see what was there for her to see. On the evidence in this record, the jury could find that had she maintained a proper lookout, she could, and in the exercise of due care should, have seen plaintiff's intestate walking on the traveled portion of the street in front of her, in a position of obvious peril; she could, and in the exercise of due care should, have observed that plain-tiff's intestate was inadvertent to her peril; after, in the exercise of due care, she should have discovered this in-advertence, she still had sufficient time and means to avoid the injury, but negligently failed to do so. These findings, if made by the jury, would support a verdict that defendant driver had the last clear chance to avoid the accident. We do not sug-

gest that the evidence would compel such findings, as to which in any event plaintiff would have the burden of proof. We do hold that the evidence was such as to give rise to an issue as to the last clear chance and such issue should have been submitted to the jury. This holding is supported by the decision in *Wanner v. Alsup*, 265 N.C. 308, 144 S.E. 2d 18.

[2] We note that Section 1 of Chap. 1156 of the 1971 Session Laws amended G.S. 1A-1, Rule 7(a) to include provision that "[i]f the answer alleges contributory negligence, a party may serve a reply alleging last clear chance." Here, plaintiff did not serve a reply and did not allege last clear chance by using those exact words in his complaint. However, he did allege in his complaint, among other allegations of negligence, that "[w]hen she [referring to defendant driver] saw, or by the exercise of due care should have seen, that a collision with plaintiff's intestate was imminent, and so saw or could have seen in time to avoid a collision, she failed and neglected to take steps to avoid a collision." This pleading was sufficiently particular to give notice that plaintiff intended to offer proof of occurrences giving rise to last clear chance, and under our new Rules of Civil Procedure the complaint here was sufficient under Rule 8 to justify submitting to the jury an issue as to last clear chance. In any event, the complaint could be amended to conform it to the evidence, even after judgment. Rule 15(b) ; *Swift & Co. v. Young*, 107 F. 2d 170.

For failure of the trial court to submit plaintiff's tendered issue as to last clear chance, plaintiff is entitled to a

New trial.

Judges VAUGHN and CARSON concur.