EARL NEALY, Plaintiff v. ZEB GREEN, Defendant

No. COA99-96

(Filed 15 August 2000)

**Negligence— pedestrian-motor vehicle accident—last clear chance—sufficiency of evidence**

The trial court erred by failing to submit last clear chance to the jury in an action arising from a pedestrian being struck by a vehicle. The first element of last clear chance is satisfied by evidence that plaintiff placed himself in a dangerous position from which he could not extricate himself by walking with his back to traffic and not turning when defendant's vehicle approached; the second element was satisfied in that defendant either actually observed plaintiff's peril or owed plaintiff a duty to discover his peril; the jury might reasonably infer from the circumstances the third element, that defendant had adequate time to avoid the accident had he been maintaining a proper lookout, although some contradictory evidence was introduced; and the jury might also reasonably infer that defendant did not slow down or apply his brakes until after the impact and that the accident might have been avoided by either action.

Appeal by plaintiff from judgment entered 21 September 1998 by Judge Wiley F. Bowen in Columbus County Superior Court. Heard in the Court of Appeals 15 November 1999.

*T. Craig Wright for plaintiff-appellant.*

*Johnson & Lambeth, by Maynard M. Brown, for defendant-appellee.*

JOHN, Judge.

Plaintiff appeals judgment entered upon a jury verdict finding defendant negligent and plaintiff contributorily negligent. Plaintiff argues the trial court erred in not submitting the issue of last clear chance to the jury. We agree and award plaintiff a new trial.

Pertinent facts and procedural history include the following: At approximately 12:45 a.m. on 6 February 1993, plaintiff Earl Nealy and two companions left the residence of Mike Nealy (Mike), plaintiff's brother, intending to walk the approximately seven hundred yard distance to plaintiff's home along Rural Paved Road 1300

NEALY v. GREEN

[139 N.C. App. 500 (2000)]

(RPR 1300) in Columbus County. Both houses were located on the south side of RPR 1300, and plaintiff was walking along the south side of the roadway with his back to south-bound traffic. Plaintiff's wife, Deborah Nealy (Deborah), left Mike's residence in her automobile shortly after plaintiff, passed him on the road, and pulled into their driveway.

At the same time, defendant Zeb Green was operating a pick-up truck in a southerly direction on RPR 1300. Just after Deborah had entered the driveway and as defendant passed plaintiff, the side mirror on defendant's truck struck plaintiff in the head, rendering him unconscious.

Plaintiff timely filed suit, alleging defendant's negligence was the proximate cause of plaintiff's injuries, including "head injuries and lacerations in the right occipital region and . . . abrasions to the right temple." Defendant answered alleging, *inter alia*, that plaintiff was contributorily negligent in that he "walked with his back toward oncoming traffic" and "walked . . . in the lane of travel of the [d]efendant's vehicle." In his subsequent reply, plaintiff asserted defendant had the last clear chance to avoid the accident.

Trial commenced 8 September 1998 and the following relevant evidence was elicited: Plaintiff testified he walked "on the shoulder, on the grass" at all times and not on the surface of the road as alleged by defendant. He further stated there were lights along each yard between his residence and that of his brother, and that the area where he was walking thus was well illuminated. After Deborah had driven by, plaintiff saw vehicles approaching traveling north on RPR 1300, and then heard "a truck coming, or a car" from behind him. Plaintiff did not hear a horn and did not look back or move further over onto the shoulder.

In her testimony, Deborah confirmed that lights were in each yard "almost at the road," noted the weather was "clear" on the night in question, and stated she was able to see persons and objects while driving along the road at the point where plaintiff was struck. Deborah specifically testified she saw plaintiff from her vehicle and that he was walking on the grass as she passed.

Plaintiff's twenty-one year old son, observing his father from the doorway of their home, related that plaintiff was walking on the grass, that there were no obstructions on the roadway or "anything blocking anybody's view coming up and down that road," and that he

saw defendant's truck go "off the road a little bit, on the grass," before it struck plaintiff.

In a video-taped deposition, defendant's wife, Estell Green (Estell), testified she was a passenger in defendant's truck on the night of the accident. According to Estell, the weather was "fair" and the road straight in the area where plaintiff was struck, and there was nothing "on the side of the road to keep [her] from seeing." Defendant's vehicle was "on the road" when the accident occurred, she continued, and he was driving below the posted speed limit of fifty-five miles per hour at "between 45 and 50." Estell also testified she saw no lights along the road.

Estell recounted the accident as follows:

A: All I remember is seeing those two trucks coming down the road just before the accident, but they were two trucks coming from towards Tabor City and we were going [the other] way.

. . . .

Q [Plaintiff's attorney]: And you say you saw [plaintiff]?

A Yeah. I saw [plaintiff] when he was right at the truck. Right about where the antenna on the truck was at, he was right close to there. And after I saw him right at the truck, that's when the mirror hit him.

Defendant's testimony generally corroborated that of his wife regarding the weather and road conditions and his speed at the time of the accident. Defendant added he had driven RPR 1300 "[m]any times," and that it was a narrow "farm to market road." He recounted his observations as follows:

A: Well, I was going along the—the road and I was meeting them trucks. I dimmed my lights. And as soon as them trucks passed I seen [plaintiff] . . . approximately about ten foot, enough to where I could whip the truck. I cut it to the left and just about time I cut it to the left, the mirror hit [plaintiff].

Q [Defendant's attorney]: . . . The two trucks coming the other way passed by you; is that correct?

A: Yes, sir.

Q: All right. And that's when you first saw the [plaintiff]?

A: Well, the trucks had passed.

NEALY v. GREEN

[139 N.C. App. 500 (2000)]

Q: Right.

A: And then, after I got to—Well, I seen him . . . just a split second. If I hadn't have seen [him] I'd have hit [him] with the front of my truck.

Q: Okay. Now, where was [plaintiff] in relation to the road?

A: He was walking on that white line. On—

Q: All right. And could you see his face?

A: No, sir.

. . . .

Q [Plaintiff's attorney]: When you were meeting the trucks, did that affect your ability to see at all?

A: No, sir.

. . . .

Q: . . . But you could still plainly see the lane you were in, even on up the road?

A: [Yes].

Q: And yet you didn't see anybody there until you were right on him?

A: No I didn't—I didn't see him—I didn't—did not see [plaintiff] till I was in about ten foot of [him].

. . . .

Q: Do you remember seeing any other vehicles coming that way after [the two trucks passed]?

A: Well, after the accident they—they kept coming some along, you know. After—When I was sitting in my truck, had got—they put me in my truck. And they—they had met sitting in the middle of the road in the truck, and all the traffic was coming down there and everything. . . .

Q: Yes, sir. But right after the accident you don't—see no vehicles coming by about the same time you collided with [plaintiff]?

A: No, sir.

. . . .

Q: When you whipped your truck, did you—and I know you say you were trying to avoid [plaintiff], when you whipped your truck did you go into the other lane all the way, halfway, what?

A: Well, I went into the other lane some, yeah.

Defendant also stated he traveled "fifty or sixty" feet before coming to a stop following impact.

Following presentation of the evidence, plaintiff requested that the issue of last clear chance be submitted to the jury. After hearing argument from both parties, the trial court denied the request.

The jury subsequently returned a verdict finding plaintiff had been "injured by the negligence of the defendant," but that plaintiff "by his own negligence, contribute[d] to his injuries," thereby precluding any recovery by plaintiff. Plaintiff timely appealed.

The issue of last clear chance

[m]ust be submitted to the jury if the evidence, when viewed in the light most favorable to the plaintiff, will support a reasonable inference of each essential element of the doctrine.

*Bowden v. Bell*, 116 N.C. App. 64, 68, 446 S.E.2d 816, 819 (1994). Failure to submit the issue when proper is reversible error requiring a new trial. *Hales v. Thompson*, 111 N.C. App. 350, 356, 432 S.E.2d 388, 392 (1993). Further,

[w]hether the evidence is sufficient to require submission of the case to the jury on the last clear chance doctrine depends on the facts of the individual case.

*Wray v. Hughes*, 44 N.C. App. 678, 682, 262 S.E.2d 307, 310, *disc. review denied*, 300 N.C. 203, 269 S.E.2d 628 (1980).

When, as in the instant case,

an injured pedestrian who has been guilty of contributory negligence invokes the last clear chance . . . doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discov-

ered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him.

*Wade v. Sausage Co.*, 239 N.C. 524, 525, 80 S.E.2d 150, 151 (1954); *accord, Vancamp v. Burgner*, 328 N.C. 495, 498, 402 S.E.2d 375, 376-77 (1991) (quoting *Wade*). We address in turn the evidence *sub judice* pertinent to each of the four elements.

The first element is satisfied by a showing that plaintiff's

prior contributory negligence ha[d] placed [him] in a position from which [he was] powerless to extricate [him]self.

. . . .

The situation is not one of true helplessness, as the injured party is in a position to escape. Rather, the negligence consists of failure to pay attention to one's surroundings and discover his own peril.

*Williams v. Odell*, 90 N.C. App. 699, 704, 370 S.E.2d 62, 66, *disc. review denied*, 323 N.C. 370, 373 S.E.2d 557 (1988).

Cases discussing this first element have consistently distinguished between situations in which the injured pedestrian was facing oncoming traffic and those in which the pedestrian was not. Accordingly, an instruction on last clear chance was held not warranted when a pedestrian was facing traffic and, "by the exercise of reasonable care, [could have] extricated herself from the position of peril in which she had negligently placed herself." *Id.* (pedestrian standing at rear of her vehicle facing traffic when accident occurred and had witnessed three vehicles "nearly collide with her vehicle," but failed to move to shoulder of road); *see also Clodfelter v. Carroll*, 261 N.C. 630, 635, 135 S.E.2d 636, 639 (1964) (pedestrian walking with one foot on road, one foot on shoulder, facing traffic, and observed defendant's vehicle approach prior to impact).

On the other hand, evidence tending to show the injured pedestrian either was not facing oncoming traffic or did not see the

approaching vehicle has been found sufficient to satisfy the first element, our courts reasoning that the pedestrian who did not apprehend imminent danger "could not reasonably have been expected to act to avoid injury." *Watson v. White*, 309 N.C. 498, 505, 308 S.E.2d 268, 272 (1983) (pedestrian who did not see defendant's vehicle approach injured while crossing highway); *see also Williams v. Spell*, 51 N.C. App. 134, 136, 275 S.E.2d 282, 284 (1981) (pedestrian walking with back to traffic "placed himself in a position of helpless peril").

In the present case, the pleadings as well as the parties' undisputed testimony indicated plaintiff was walking with his back to traffic and did not turn when defendant's vehicle approached. Evidence sufficient to support a reasonable inference, *see Bowden*, 116 N.C. App. at 68, 446 S.E.2d at 819, was thus presented that plaintiff, by failing to "pay attention to [his] surroundings and discover his own peril," *Odell*, 90 N.C. App. at 704, 370 S.E.2d at 66, thereby placed himself in a dangerous position from which he could not extricate himself. Therefore, the first requisite element for a last clear chance jury instruction was satisfied. *See Wade*, 239 N.C. at 525, 80 S.E.2d at 151.

Regarding the second element, *i.e.*, discovery by the defendant of the plaintiff's perilous position before occurrence of the injury, *see id.*, the testimony of defendant reflected he noticed plaintiff prior to impact, that plaintiff was standing "on th[e] white line" of the road, and that defendant could not see plaintiff's face. Viewed in the light most favorable to plaintiff, this evidence was adequate to support a reasonable inference, *Bowden*, 116 N.C. App. at 68, 446 S.E.2d at 819, that defendant knew plaintiff was walking on the road with his back towards traffic, that plaintiff could not see defendant, and that plaintiff thus was in a position of peril.

Further, it is well established that

> a motorist upon the highway . . . owe[s] a duty to all other persons using the highway, including its shoulders, to maintain a lookout in the direction in which the motorist is traveling.

*Exum v. Boyles*, 272 N.C. 567, 576, 158 S.E.2d 845, 852-53 (1968). Accordingly, even if not actually recognizing plaintiff's peril, defendant owed plaintiff a duty to maintain a proper lookout whereby, through "the exercise of reasonable care, [he] could have discovered plaintiff's perilous position," *Watson*, 309 N.C. at 505, 308 S.E.2d at

272-73 (if defendant did not actually know of plaintiff's peril, doctrine of last clear chance imposes liability only if defendant owed a duty to plaintiff to maintain lookout), had such lookout been maintained, *see id.* We conclude that the evidence considered in the light most favorable to plaintiff was sufficient to support a reasonable inference, *see Bowden,* 116 N.C. App. at 68, 446 S.E.2d at 819, that defendant, had he maintained a proper lookout, could in the exercise of reasonable care have "discovered plaintiff's perilous position," *Watson,* 309 N.C. at 505, 308 S.E.2d at 273.

Therefore, under either mode of reasoning—that defendant actually observed plaintiff's perilous position or owed a duty to plaintiff to discover the latter's position of peril—the second element of the *Wade* test was satisfied. *See Wade,* 239 N.C. at 525, 80 S.E.2d at 151.

To meet the third element, evidence must be presented tending to show

that defendant had the time and the means to avoid the injury to the plaintiff by the exercise of reasonable care after [he] discovered or should have discovered plaintiff's perilous position.

*Watson,* 309 N.C. at 505-06, 308 S.E.2d at 273.

As to this issue, the record reflects evidence that plaintiff was walking next to a narrow road with his back to traffic, and at the time of impact had traveled two thousand feet from his brother's residence to within approximately one hundred feet of his own home. The roadway was straight over the entire distance and the area was well lighted. Further, defendant had driven RPR 1300 "many times," and on this occasion was traveling at 45 mph. There were no obstructions in the road, the weather was clear, and although defendant had just passed two oncoming trucks, this did not affect his ability to see "on up the road." Defendant did not actually see plaintiff until traveling within ten feet of him and pulled only slightly to his left "into the other lane some" in an attempt to avoid striking plaintiff, even though that lane was clear and no oncoming traffic was approaching. Finally, defendant's vehicle traveled fifty or sixty feet before coming to a stop in the middle of the road.

Considered in the light most favorable to plaintiff, the evidence was adequate to raise a reasonable inference that defendant might have avoided the accident. *See Bowden,* 116 N.C. App. at 68, 446

S.E.2d at 819. Defendant pulled into the left lane only slightly notwithstanding that such lane was free of oncoming traffic and defendant could safely have proceeded farther. *See Thacker v. Harris*, 22 N.C. App. 103, 108, 205 S.E.2d 744, 747 (1974) (pedestrian, walking with back to traffic, struck from behind by defendant; as there was no approaching traffic, defendant had "opportunity to turn her car toward the center or left-hand portion of the street" so as to avoid striking pedestrian); *see also Spell*, 51 N.C. App. at 136, 275 S.E.2d at 284 (defendant had means to avoid hitting pedestrian where evidence indicated lack of oncoming traffic and defendant conceded he could have moved had he seen plaintiff).

Further, defendant's testimony—that he slowed down to forty-five miles per hour upon meeting the two trucks, but upon noticing plaintiff after the trucks had passed, he simply "whipped the truck" to the left—contained no assertion he decreased his speed or applied his brakes upon seeing plaintiff:

Q [Defendant's attorney]: And when you saw [plaintiff], what did you do, sir?

A: I whipped the truck.

. . . .

Q: All right. What did you do after the accident?

A: Well, my wife jumped out of the—the—

Q: Well, did you bring your vehicle to a stop first?

A: Yes, sir.

From the foregoing testimony, viewed in the light most favorable to plaintiff, a jury might reasonably infer that defendant did not slow down or apply his brakes until after impact with plaintiff, and that the accident might have been avoided had he attempted either. *See Bowden*, 116 N.C. App. at 68, 446 S.E.2d at 819.

Although a closer question, a jury might also reasonably infer from the instant circumstances, *see id.*, that defendant had adequate time to avoid the accident. Defendant's recollection in his testimony was that he saw plaintiff within ten feet of his vehicle just after the trucks had passed and that he immediately swerved to the left, but nonetheless struck plaintiff with his side mirror. At first blush, it might appear defendant was unable to act to avoid the accident.

However, defendant owed a duty to plaintiff to maintain a proper lookout. *Watson*, 309 N.C. at 505, 308 S.E.2d at 273. Although passed by two trucks just prior to the accident, defendant specifically testified that neither his visibility nor his vision were affected and that he was able to see "on up the road." However, defendant failed to see plaintiff until a "split second" before impact.

Given defendant's duty to maintain a proper lookout and the circumstances that the area was well-lighted, the weather was clear, the road was straight, there were no obstructions in the road, and that defendant himself testified that his visibility and vision had not been affected by the passing of two trucks traveling in the opposite direction, a jury might reasonably conclude

> that defendant had the time . . . to avoid the injury to the plaintiff by the exercise of reasonable care after [he] . . . *should have discovered* plaintiff's perilous position.

*Watson*, 309 N.C. at 505-06, 308 S.E.2d at 273 (emphasis added); *see also Harrison v. Lewis*, 15 N.C. App. 26, 33-34, 189 S.E.2d 662, 666 (1972) ("had the defendant maintained [a proper] lookout, he could have observed the plaintiff" in time to avoid hitting him).

Further, there was no evidence defendant attempted to slow his vehicle or apply the brakes until after plaintiff had been struck. Had defendant been maintaining a proper lookout and seen plaintiff prior to a "split second" before impact, a jury might reasonably infer he could have attempted to slow his vehicle and avoided injury to plaintiff. *See id.*, and *Bowden*, 116 N.C. App. at 68, 446 S.E.2d at 819.

We note that our courts have generally found evidence on the third element lacking in instances involving a sudden movement by the pedestrian thereby placing himself in harm's way, *see Grogan v. Miller Brewing Co.*, 72 N.C. App. 620, 624, 325 S.E.2d 9, 11 (defendant had no time to avoid accident as pedestrian-plaintiff suddenly darted out into path of forklift), *disc. review denied*, 313 N.C. 600, 330 S.E.2d 609 (1985); *Hughes v. Gragg*, 62 N.C. App. 116, 118, 302 S.E.2d 304, 305-06 (1983) (pedestrian "jumped in front of [defendant's] car" immediately prior to impact), or in which the motorist otherwise lacked sufficient opportunity to react, *see Watson*, 309 N.C. at 506, 308 S.E.2d at 273 (defendant lacked time to avoid accident which occurred immediately after defendant rounded curve). In the instant case, however, no evidence suggested plaintiff had moved suddenly

or that road conditions or any other factor in any way limited defendant's reaction time.

Two prior decisions support our view of the present case. In *Bowden*, 116 N.C. App. 64, 446 S.E.2d 816, the pedestrian-plaintiff was crossing a street with his dog when he was struck by the automobile of driver-defendant. Other facts surrounding the accident are strikingly similar to that *sub judice*.

> When viewed in the light most favorable to plaintiff, the evidence tended to show that defendant was driving within the speed limit of thirty-five miles per hour, that he had his headlights on, and that visibility was good. . . . [T]he area was lit with streetlights and [a policeman at the scene] "had no problem seeing anybody or anything" in the street when he arrived. Defendant testified that he had driven through the area on many occasions. . . . At no time did defendant sound his horn. Defendant also testified that when he saw plaintiff, plaintiff was standing still in the highway. Finally, defendant's tires left skid marks on the highway measuring approximately twenty feet. We conclude that this evidence was sufficient to support a reasonable inference that after defendant discovered, or should have discovered, plaintiff's peril, he had the time and means to avoid the injury to plaintiff.

*Id.* at 68, 446 S.E.2d at 819-20.

*Bowden* cited *Earle v. Wyrick*, 286 N.C. 175, 209 S.E.2d 469 (1974). In *Earle*, as herein, the pedestrian was walking with her back to traffic when struck from behind by the defendant's automobile. The road "was straight and permitted an unobstructed view," and "there was no interfering traffic." *Id.* at 176, 209 S.E.2d at 469. Further,

> [t]he defendant was driving approximately twenty-five to thirty miles per hour. It was nighttime, but the street was well lighted. The defendant saw the plaintiff only a split second before impact and did not sound the horn. The defendant's tires left skid marks measuring twenty-six feet. The Court concluded that this evidence was sufficient to warrant the submission of the issue of last clear chance to the jury.

*Bowden*, 116 N.C. App. at 69, 446 S.E.2d at 820.

Similarly, the evidence *sub judice*, viewed in the light most favorable to plaintiff, was sufficient to support a jury's reasonable infer-

ence, *see id.* at 68, 446 S.E.2d at 819, that defendant was traveling within the speed limit in a well-lighted area, failed to sound his horn, and after hitting plaintiff, traveled fifty to sixty feet before coming to a stop. Defendant had driven RPR 1300 many times, as in *Bowden*, the road was straight with no obstructions or interfering traffic, and defendant failed to see plaintiff until a "split second" prior to impact. In addition, in the instant case evidence was presented that defendant did not slow down before hitting plaintiff and could have avoided the collision by pulling farther over to the left side of the highway, which was devoid of oncoming traffic.

> Thus, from plaintiff's evidence a jury reasonably could infer both that defendant had the time and means to avoid the collision, and that defendant negligently failed to use the available time and means to avoid injury to plaintiff,

*Vancamp*, 328 N.C. at 500, 402 S.E.2d at 378, satisfying both the third and fourth elements of the last clear chance test, *see Wade*, 239 N.C. at 525, 80 S.E.2d at 151.

In closing, we emphasize that our holding the evidence to have been sufficient to require submission of a last clear chance issue to the jury does not compel an affirmative answer to the issue by the jury, *see Thacker*, 22 N.C. App. at 109, 205 S.E.2d at 748, as some contradictory evidence was introduced. For example, both defendant and his wife claimed the area surrounding the accident scene was not well-lighted. However, such "contradictions [are] for jury determination." *Harrison*, 15 N.C. App. at 32, 189 S.E.2d at 665. Given that plaintiff presented evidence supporting a reasonable inference of each element of the last clear chance doctrine, *see Bowden*, 116 N.C. App. at 68, 446 S.E.2d at 819, the trial court erred by failing to submit the issue to the jury and plaintiff is entitled to a new trial, *see Hales*, 111 N.C. App. at 356, 432 S.E.2d at 392.

New Trial.

Chief Judge EAGLES and Judge EDMUNDS concur.