OVERTON v. PURVIS

[154 N.C. App. 543 (2002)]

RICHARD ALLEN OVERTON, Plaintiff v. WILLIAM ROBERT PURVIS, Defendant

No. COA01-1520

(Filed 17 December 2002)

**Negligence— last clear chance—fox hunter struck while standing in road**

The trial court erred in an automobile accident case by instructing on last clear chance where plaintiff was struck while standing in a roadway trying to protect dogs which were crossing the roadway while chasing a fox. Plaintiff was facing defendant's approaching vehicle and chose to stay in the road until a collision was imminent; by so doing, he failed in the first element of last clear chance (that he could not have escaped his position of peril by reasonable care).

Judge THOMAS dissenting.

Appeal by defendant from judgment entered 18 June 2001 by Judge Quentin T. Sumner in Pitt County Superior Court. Heard in the Court of Appeals 14 October 2002.

*The Blount Law Firm, P.L.L.C., by Marvin K. Blount, III, for plaintiff-appellee.*

*Walker, Clark, Allen, Grice & Ammons, L.L.P., by Jerry A. Allen and Gay P. Stanley, for defendant-appellant.*

EAGLES, Chief Judge.

Defendant, William Robert Purvis, appeals from judgment entered in Pitt County Superior Court upon a jury verdict in favor of plaintiff, Richard Allen Overton, in a negligence action brought by plaintiff after he was hit by an automobile driven by defendant.

The evidence at trial tended to establish the following. During the early morning hours of 7 September 1996, plaintiff and several other individuals were fox hunting near Falkland, North Carolina. Shortly after 6:00 a.m., the hunters released approximately forty hunting dogs into a field, roughly one quarter of a mile south of Highway 222. The dogs subsequently began pursuing a fox in the direction of Highway 222. After realizing that the dogs would soon be crossing the highway, plaintiff and several other hunters drove to the area to guide the dogs across the road. At approximately 6:30 a.m., plaintiff saw the fox

cross Highway 222 with several dogs in pursuit. Plaintiff drove off the roadway and onto the eastbound shoulder, near the spot where the fox and the first dogs had crossed the highway. Plaintiff got out of his truck, walked into the westbound lane of travel near the middle of the roadway and began calling the remaining dogs so they would all cross the highway at the same location.

This particular portion of Highway 222 runs roughly east to west, through a rural area in Pitt County. Despite the early hour, there was "plenty of daylight" and visibility was "good" on this particular morning. The highway where the dogs were crossing consisted of a relatively straight, flat, two-lane, paved road surface, with one eastbound lane and one westbound lane. The lanes were divided by a yellow line which was solid on the side for westbound traffic and broken on the side for eastbound traffic. The posted speed limit was 55 miles per hour.

A few moments after plaintiff pulled off the road and began calling the remaining dogs, he was joined by two other hunters, Jay Womble and Billy Clifton. Womble and Clifton parked their vehicles near plaintiff's truck, so that there were vehicles parked on both shoulders of the road. Womble got out of his vehicle and stood in the westbound lane of the road. However, Womble stood slightly "behind" plaintiff and closer to the shoulder of the westbound lane. The dogs crossed the road intermittently over the next fifteen minutes.

At approximately 6:45 a.m., defendant, who was traveling west on Highway 222, rounded the curve and entered the long straight stretch where plaintiff and the other two hunters had pulled off the road. Plaintiff saw defendant's truck as it came around the curve, approximately 1000 feet to the east of where plaintiff was standing in the road. Plaintiff, expecting defendant to slow down or stop, did not attempt to move out of the roadway. Instead, plaintiff remained in the westbound lane of travel in order to "protect the dogs" but plaintiff "kept watching" defendant's vehicle as it approached him. Defendant continued approaching in the westbound lane at what appeared to be a constant speed of 45 to 50 miles per hour. When defendant's truck was approximately 500 to 600 feet away, plaintiff began waving his hands and hat in order to attract defendant's attention. Defendant continued to approach and still did not appear to be slowing down. When defendant's truck was approximately 100 to 150 feet away, plaintiff "realized" that defendant "wasn't going to stop." To avoid being hit, plaintiff turned and ran across the yellow line into the eastbound lane of the highway. Plaintiff, expecting defendant to continue

OVERTON v. PURVIS

[154 N.C. App. 543 (2002)]

traveling in the westbound lane, anticipated that this action would safely remove him from the path of defendant's approaching truck and defendant would simply pass behind him. However, at the same moment that plaintiff ran into the eastbound lane of travel, defendant's vehicle also swerved into the eastbound lane where defendant's truck ultimately struck plaintiff.

Plaintiff testified that he had a clear view of defendant's truck as it came around the curve and entered the straight stretch and that he continued to watch the approaching truck for approximately "30 seconds." Plaintiff also testified that he "made a choice to stay in the road until [he] could stay no longer." Plaintiff further stated that once he started to run from the westbound to the eastbound lane, he momentarily diverted his attention from the approaching truck to see where he was going. However, as soon as plaintiff reached the eastbound lane, he stopped and again turned around to look for defendant's truck, only to find that the truck was upon him.

Defendant testified that he did not immediately notice the vehicles parked on the sides of the road when he came around the curve and entered the straight stretch. Defendant estimated he was about 500 feet away from the vehicles when he first noticed them parked along the sides of the road. Even then, defendant did not notice anyone standing in the road. It was only after defendant had gotten closer to the vehicles that he was able to discern anyone standing in the road. At first, defendant only saw Jay Womble standing on the right hand side of the road, waving his arms for defendant to stop or go to the other side of the road. Defendant said his attention was focused on Womble and that this was the reason he did not see plaintiff standing in the road. Defendant further stated that by the time he noticed plaintiff, it was too late to stop to avoid hitting him.

After hearing the evidence, the jury found that defendant was negligent; that plaintiff was contributorily negligent; and that defendant had the last clear chance to avoid the injury. The jury awarded damages to plaintiff in the amount of seven thousand dollars and the trial court entered judgment.

Following entry of judgment, plaintiff moved for attorney's fees and costs pursuant to N.C. Gen. Stat. § 6-21.1 (2001). Plaintiff further moved for additur or in the alternative, for a new trial on the issue of damages. Defendant consented to increasing the amount of the jury's verdict to $10,564.05 and to the payment of costs and interest in the amount of $4,129.85. Defendant also moved for judgment notwith-

standing the verdict and in the alternative, for a new trial. The trial court denied defendant's motions and plaintiff's motions for additur and for a new trial, but awarded attorney's fees and costs in the amount of $43,311.10. Defendant appeals.

On appeal, defendant assigns error and argues the following issues: (1) Whether the trial court erred in instructing on and submitting to the jury the issue of last clear chance; (2) whether the trial court erred in denying defendant's request for an instruction on the doctrine of sudden emergency; (3) whether the trial court erred in denying defendant's motion for judgment notwithstanding the verdict or in the alternative, for a new trial; (4) whether the trial court erred in denying plaintiff's motion for additur; and (5) whether the trial court erred in awarding attorney's fees and costs to plaintiff.

Defendant first argues that the trial court erred by instructing the jury on the doctrine of last clear chance. Specifically, defendant argues that an instruction on last clear chance was improper because plaintiff failed to establish the first element required to entitle him to the instruction. After careful review of the record, we agree.

A contributorily negligent pedestrian struck and injured by an automobile must establish four elements before he can invoke the doctrine of last clear chance against the driver of the automobile. These elements are:

> (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him.

*Nealy v. Green,* 139 N.C. App. 500, 504-05, 534 S.E.2d 240, 243 (2000).

"The issue of last clear chance, 'must be submitted to the jury [only] if the evidence, when viewed in the light most favorable to

the plaintiff, will support a reasonable inference of each essential element of the doctrine.'" *Culler v. Hamlett*, 148 N.C. App. 372, 379, 559 S.E.2d 195, 200 (2002) (quoting *Kenan v. Bass*, 132 N.C. App. 30, 32-33, 511 S.E.2d 6, 7 (1999)). "Unless all the necessary elements of the doctrine of last clear chance are present . . . the case is governed by the ordinary rules of negligence and contributory negligence." *Clodfelter v. Carroll*, 261 N.C. 630, 634, 135 S.E.2d 636, 638 (1964).

"Cases discussing th[e] first element have consistently distinguished between situations in which the injured pedestrian was facing oncoming traffic and those in which the pedestrian was not." *Nealy*, 139 N.C. App. at 505, 534 S.E.2d at 244. *Accord, Clodfelter v. Carroll*, 261 N.C. 630, 135 S.E.2d 636 (1964). Indeed, "[e]vidence that a plaintiff does not see an approaching vehicle or is not facing an oncoming vehicle will satisfy this element, 'our courts reasoning that the pedestrian who did not apprehend imminent danger could not reasonably have been expected to avoid injury.'" *Womack v. Stephens*, 144 N.C. App. 57, 65, 550 S.E.2d 18, 23 (2001), *disc. review denied*, 354 N.C. 229, 555 S.E.2d 277 (2001) (quoting *Nealy v. Green*, 139 N.C. App. 500, 506, 534 S.E.2d 240, 244 (2000)). On the other hand, "where the injured party is at all times in control of the danger and simply chooses to take the risk," the doctrine of last clear chance is inapplicable. *Culler*, 148 N.C. App. at 380, 559 S.E.2d at 201. Therefore, "an instruction on last clear chance . . . [is] not warranted when a pedestrian was facing traffic and, 'by the exercise of reasonable care, could have extricated [him]self from the position of peril in which [he] had negligently placed [him]self.'" *Nealy*, 139 N.C. App. at 505, 534 S.E.2d at 244 (quoting *Williams v. Odell*, 90 N.C. App. 699, 704, 370 S.E.2d 62, 66, *disc. review denied*, 323 N.C. 370, 373 S.E.2d 557 (1988)).

Here, plaintiff was facing defendant's approaching vehicle and first saw defendant's vehicle as it rounded the curve approximately 1,000 feet away. Assuming defendant would stop, plaintiff remained in the roadway for approximately "30 seconds" where he "kept watching" as defendant's vehicle steadily approached. Despite noting that defendant's vehicle did not appear to be slowing down, plaintiff "made a choice to stay in the road" and thereby ignored the danger from which he had the power to extricate himself. Furthermore, plaintiff had ample time and opportunity to remove himself from the danger presented by defendant's approaching vehicle and avoid the injuries he sustained. However, plaintiff, in full possession of his fac-

ulties and in disregard for his own safety, took no action to remove himself from the path of defendant's oncoming vehicle until a collision appeared imminent.

Viewed in the light most favorable to the plaintiff, this evidence fails to support a reasonable inference that plaintiff, by the exercise of reasonable care, could not escape the position of peril in which he negligently placed himself. Since plaintiff has failed to establish the first element of the doctrine of last clear chance, we hold it was error for the trial court to instruct the jury on the issue of last clear chance. Accordingly, the judgment of the trial court is reversed and the case is remanded to the trial court for entry of judgment in accordance with ordinary principles of negligence and contributory negligence. We need not address defendant's remaining assignments of error.

Reversed and remanded.

Judge TYSON concurs.

Judge THOMAS dissents.

THOMAS, Judge, dissenting.

Because the evidence, when viewed in the light most favorable to plaintiff, supports a reasonable inference of each essential element of the doctrine of last clear chance, I respectfully dissent.

Last clear chance is one of our most agonizingly complex legal doctrines. In *Exum v. Boyles*, 272 N.C. 567, 158 S.E.2d 845 (1968), our Supreme Court addressed the nature of this doctrine as follows:

In *Gunter v. Wicker*, 85 N.C. 310, which appears to have been the first case applying the last clear chance doctrine in North Carolina, Smith, C. J., observed that "there is great difficulty in extracting from the numerous adjudications of the courts any clear and distinct principle or formula determining when the cooperating agency of the plaintiff so directly contributes to the result as to deprive him of remedy against the other party to whose negligence the injury is attributable." The passage of time has not removed this difficulty. In Prosser, Law of Torts, 3d Ed., § 65, it is said of the doctrine of the last clear chance:

"No very satisfactory reason for the rule ever has been suggested. * * * The application of the doctrine has been attended

with much confusion. * * * It is quite literally true that there are as many variant forms and applications of this doctrine as there are jurisdictions which apply it. * * * In such a general area of confusion and disagreement, only very general statements can be offered, and reference must of necessity be made to the law of each particular state."

*Id.* at 574, 158 S.E.2d at 851.

"Much of the apparent confusion in the decisions applying this doctrine stems from the failure to observe that the respective cases involve different factual situations and, therefore, call into play different rules comprising parts of the doctrine." *Id.* at 575, 158 S.E.2d at 852. The complexity of the doctrine's application is certainly evident in the present case.

There are four elements which must be satisfied before a pedestrian struck and injured by an automobile can appropriately invoke the doctrine of last clear chance against the driver. The first element goes to the actions of the pedestrian, while the next three go to the actions of the motorist:

(1) The pedestrian's contributory negligence placed him in a position of helpless or inadvertent peril, or subjected him to a risk of harm, from which, *immediately preceding the accident*, he was unable to escape or avoid by the exercise of reasonable care;

(2) The motorist discovered, or by the exercise of reasonable care could have discovered, the pedestrian's position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands;

(3) The motorist had the time and means to avoid injury to the endangered plaintiff by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's position; and

(4) The motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian.

*See Exum,* 272 N.C. at 574-75, 158 S.E.2d at 852-53 (citing with approval Restatement of the Law, Torts, Negligence, § 479); *Trantham v. Estate of Sorrells,* 121 N.C. App. 611, 613-14, 468 S.E.2d 401, 402-03 (1996) (citing with approval Restatement (Second) of Torts § 479 (1965)); *see also Nealy v. Green,* 139 N.C. App. 500,

504-05, 534 S.E.2d 240, 243 (2000). The thrust of the last clear chance doctrine "is that a negligent plaintiff who is unable to avoid the harm placing her in helpless peril *immediately before the accident* which results in her injury may recover against a defendant who has the means and ability to avoid the accident but fails to do so." *Trantham*, 121 N.C. App. at 614, 468 S.E.2d at 403 (emphasis in original). Last clear chance is applicable if, at the time of the accident, the plaintiff "is incapable of averting harm by the exercise of reasonable care," even though this inability "is because of some antecedent lack of preparation, since he is required to exercise with reasonable attention, care, and competence only such ability as he then possesses." *Id.* (quoting Restatement (Second) Torts § 479, comment to Clause (a)).

The majority concludes plaintiff failed to establish the first element of last clear chance because the evidence "fails to support a reasonable inference that plaintiff, by the exercise of reasonable care, could not escape the position of peril in which he negligently placed himself." I disagree and conclude plaintiff was in helpless peril from which he could not escape by the exercise of reasonable care *immediately prior* to being struck by defendant's vehicle.

Viewed in the light most favorable to plaintiff, the evidence shows he walked onto the road in an attempt to protect hunting dogs. He first observed defendant's vehicle traveling toward him when it was approximately 1000 feet away. At that time, he had a reasonable expectation defendant would see him and the dogs in the road, slow down, and prepare to stop. A motorist using a highway, such as defendant, owes a duty to all other persons using the highway, including plaintiff in the present case, to keep a reasonable and proper lookout in the direction of travel and see what ought to be seen. *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 239, 311 S.E.2d 559, 568 (1984). It was reasonable for plaintiff to expect defendant to recognize and fulfill this duty.

Additionally, unlike in *Clodfelter v. Carroll*, 261 N.C. 630, 135 S.E.2d 636 (1964), and *Culler v. Hamlett*, 148 N.C. App. 372, 559 S.E.2d 192 (2002), the visual conditions here were more than adequate—it was daytime; there was no fog; the road was straight; and there was nothing to obstruct defendant's view. Plaintiff, accordingly, did not act unreasonably, as a matter of law, by staying in the road and waving his hands and hat in an attempt to attract defendant's attention, even when defendant's vehicle was 500 to 600 feet

OVERTON v. PURVIS

[154 N.C. App. 543 (2002)]

away. Plaintiff still had a reasonable expectation that defendant, in maintaining a proper lookout, would see him, slow down and prepare to stop.

Plaintiff became contributorily negligent by waiting too long to abandon his efforts to stop defendant's vehicle. However, at that point, defendant's vehicle was 100 to 150 feet away and plaintiff was standing near the center line of the road. With defendant fast approaching, plaintiff attempted to extricate himself from danger by stepping out of defendant's path. He was much closer to the other lane of travel than the shoulder of the road. Thus, he acted reasonably in clearing defendant's path by stepping into the opposite lane of travel. Defendant, however, had continued to fail to maintain a proper lookout and, according to his testimony and the majority opinion, did not notice plaintiff in the road until "it was too late to stop to avoid hitting him." When defendant finally noticed plaintiff, he swerved into the opposite lane of travel and struck him. By staying in his own clear lane of travel, defendant could have avoided the accident. This evidence is sufficient to support a reasonable inference plaintiff was in helpless peril from which he could not extricate himself *immediately preceding* the accident. Thus, the first element of last clear chance is met.

Defendant fails to dispute the existence of the second and fourth elements of last clear chance. Therefore, we assume the evidence supports those two elements. *Hales v. Thompson*, 111 N.C. App. 350, 356, 432 S.E.2d 388, 392 (1993).

Defendant does, however, contest the third element of last clear chance. He contends the evidence is not supportive of a reasonable inference that he had the time and means to avoid the accident by the exercise of reasonable care after he discovered, or should have discovered, plaintiff's helpless peril. I disagree.

Viewed in the light most favorable to plaintiff, the evidence shows defendant did not notice the vehicles parked on the side of the road until he was approximately 500 feet away. Even then, he did not see the two people standing in the road. It was only after he had gotten closer to the vehicles that he noticed Jay Womble standing on the right-hand side of the road. Womble testified that when he realized defendant was not slowing, he stepped off the road and onto the shoulder. Despite then seeing Womble and the parked vehicles, defendant did not see plaintiff until "it was too late to stop to avoid hitting him." If defendant had maintained a proper lookout, he would

have noticed plaintiff sooner and could have stayed in his own clear lane of travel, at whatever speed, and avoided striking plaintiff. Further, the evidence, taken in the light most favorable to plaintiff, shows defendant did not apply his brakes until after he hit plaintiff. This evidence is sufficient to support a reasonable inference that, had he exercised reasonable care, defendant had the time and means to avoid the accident. The jury had an adequate basis on which to return its verdict.

Because I find the evidence sufficient to warrant the trial court's instruction on last clear chance, it is necessary to also address defendant's remaining assignments of error.

Having carefully reviewed the record and briefs, I find the following assignments of error raised by defendant lacking in merit: (1) the trial court erred in denying his requested jury instruction on the doctrine of sudden emergency, *See Hairston*, 310 N.C. at 229, 311 S.E.2d at 568 (the sudden emergency must not have been created by the negligence of the party seeking protection of the doctrine); *accord Long v. Harris,* 137 N.C. App. 461, 528 S.E.2d 633 (2000); *Conner v. Continental Industrial Chemicals*, 123 N.C. App. 70, 472 S.E.2d 176 (1996); (2) the trial court erred in denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on the issue of last clear chance; (3) the trial court erred in denying plaintiff's motion for additur, *See Lazenby v. Godwin*, 40 N.C. App. 487, 496, 253 S.E.2d 489, 493 (1979) (a ruling on a motion for additur is within the discretion of the trial judge); and (4) the trial court abused its discretion in granting plaintiff's motion for attorneys' fees, *See Washington v. Horton*, 132 N.C. App. 347, 513 S.E.2d 331 (1999) (setting forth six factors to be considered by trial court in determining whether to award attorneys' fees under N.C. Gen. Stat. § 6-21.1); *Thorpe v. Perry Reddick*, 144 N.C. App. 567, 551 S.E.2d 852 (2001) (award of attorneys' fees will not be overturned absent an abuse of discretion); *Tew v. West*, 143 N.C. App. 534, 546 S.E.2d 183 (2001).

I would remand for a new hearing on plaintiff's motion for costs. The trial court is required to make more detailed findings of fact concerning (1) whether the costs alleged by plaintiff are allowable under Chapter 7A, Article 28 of the General Statutes or N.C. Gen. Stat. § 6-20; and (2) whether the costs are reasonable and necessary. *See Lewis v. Setty*, 140 N.C. App. 536, 537 S.E.2d 505 (2000); *Minton v. Lowe's Food Stores*, 121 N.C. App. 675, 468 S.E.2d 513 (1996).

Accordingly, I respectfully dissent as to the trial court's instruction on last clear chance. I would affirm the trial court's judgment entered on the jury's verdict. I also would affirm the trial court's award of attorneys' fees but reverse and remand for a new hearing on the issue of costs.