*537
 
 TYSON, Judge.
 

 *549
 
 John James Scheffer ("Plaintiff") appeals from the trial court's judgment entered after a jury's verdict determined the death of Jeremy Talbot Scheffer ("Scheffer") was caused by the negligence of Nathaniel Eugene Dalton ("Defendant"), but also found Scheffer's contributory negligence contributed to his death. We affirm in part, reverse in part, and remand for a new trial.
 

 I. Background
 

 On 20 November 2012, Plaintiff, as Administrator of Scheffer's estate, filed a complaint against Defendant. Plaintiff alleged Defendant's negligence resulted in the wrongful death of Scheffer. Defendant filed an Answer and alleged Scheffer's negligence contributed to the accident and barred any recovery. Plaintiff filed a Reply to Defendant's Answer and alleged contributory negligence does not bar Plaintiff's recovery and asserted Defendant had the last clear chance to avoid injury to Scheffer.
 

 Scheffer used a "moped," a portmanteau of "motor" and "pedal," as his primary means of transportation. He was employed at The Spirited Cyclist, a bicycle shop located in Huntersville. On 27 November 2010, Scheffer left the bicycle shop just after 6:30 p.m. The factory installed headlight on the front of Scheffer's moped had been broken in a previous accident. Scheffer had attached a bicycle light to the front of the moped. The light Scheffer used was a "Blackburn Flea 2.0." This particular model of bicycle light was sold at The Spirited Cyclist. Scheffer would often charge the batteries for the light at the bicycle shop. No evidence was presented tending to show whether Scheffer charged the bicycle light battery on the day of the accident.
 

 Kathryn Turner ("Turner") was traveling south on North Carolina Highway 115 in Mooresville on 27 November 2010. She testified she saw a "very, very faint little light" on the road ahead. She stated it was not a headlight or a fixed light. Turner first saw the light when it was about two car lengths away. She initially believed it was someone walking because the light was "moving back and forth." Turner "had no idea" what the light was. She looked in her rearview mirror after the light passed her car and saw nothing. Turner also testified it was very dark that evening. The distance from where Turner saw this light to the scene of the accident is 1.15 miles.
 

 The next morning, Turner learned from television news reports that a moped driver had been killed in the area where she had observed the faint light. She told a co-worker, the wife of a Mooresville police officer, about seeing the light while driving on Highway 115. Several weeks later, Officer Bucky Goodale was investigating the accident and called
 
 *550
 
 Turner to request a statement about what she had seen that evening on Highway 115.
 

 James Cockrell ("Cockrell") also observed an incident that evening. Cockrell stopped his vehicle at the intersection of Highway 115 and Faith Road and prepared to turn right onto northbound Highway 115. Cockrell looked both ways, saw a northbound car approaching, and waited for the car to pass. He did not see either a moped or a light behind the car.
 

 Cockrell looked left again and began to take his foot of the brake to pull onto Highway 115 when he observed "just a streak went by me, and I thought it was a motorcycle." Cockrell was certain he did not see any lights on the moped. He testified he almost pulled out in front of the "streak" or "motorcycle." Cockrell turned onto Highway 115 after the object passed.
 

 Defendant was traveling south on Highway 115 in his 1993 Honda Accord. He approached the intersection of Steam Engine Drive, where he intended to turn left. This four-way intersection is fully signalized with dedicated right and left turn lanes on Highway 115. Steam Engine Drive is approximately 0.3 mile north of Faith Road, where Cockrell had observed the "streak" pass in front of him. Defendant slowed, turned on his left turn signal, entered into the left turn lane, and waited for an oncoming northbound vehicle to pass. Defendant testified he did not see anything else located or travelling behind the vehicle.
 

 *538
 
 Defendant began turning left from Highway 115 onto Steam Engine Drive after the vehicle passed. He did not come to a complete stop before he began to execute the left turn on the green light. Defendant began to execute the turn early, without driving completely into the intersection. He crossed the double yellow line that delineated his lane of travel, the turn lane, from Scheffer's lane of travel, the northbound lane of Highway 115. Defendant crossed the double yellow line twenty-eight feet before the painted stop line. His car was heading towards the outbound, improper lane of Steam Engine Drive.
 

 Scheffer's moped collided with Defendant's car. The collision occurred within Scheffer's lane of travel as Defendant was turning left. Defendant testified, "as soon as the car passed, I was making the left turn, and there was a collision, and I didn't know-I didn't even know what happened." Defendant testified he did not see Scheffer, a moped, or anything else, prior to the collision.
 

 Cockrell arrived at the intersection and saw Scheffer land on the ground, but did not see the collision. He testified the lighting at
 
 *551
 
 the intersection of Steam Engine Road and Highway 115 is "a whole lot better" than the Faith Road intersection where he had observed "the streak" go by him.
 

 Sean Dennis ("Dennis"), an accident reconstructionist, testified as an expert witness on behalf of Plaintiff. Dennis calculated that Defendant had coasted at a speed of slightly less than seven miles per hour for several seconds before turning left on the green light. The investigating officer calculated Defendant's speed prior to the impact as less than six miles per hour. Dennis measured thirty-four feet and nine inches of skid marks left by Scheffer's moped prior to the collision. The left front tire of Defendant's car left two feet of skid marks on the road. Defendant testified he immediately slammed on brakes after the impact and "it scared [him] pretty bad, because [he] didn't know what happened."
 

 The Blackburn Flea 2.0 light was apparently affixed to the left handlebar of Scheffer's moped. Plaintiff's expert, Dennis, testified the light on Scheffer's moped was a bicycle light and was not intended to be used on a motorized vehicle. Scheffer's bicycle light was inoperable following the accident, and Dennis performed his testing and inspection using an "exemplar" light. No physical evidence showed whether Scheffer's light was operating or on at the time of the accident or whether its battery remained charged.
 

 According to Dennis, mounting the light on the left handlebar of a moped causes the light to point fifteen degrees to the left, rather than straight ahead. The four LED bulbs protrude beyond their housing, causing the light to be visible for one-hundred eighty degrees around the light. Dennis testified the "exemplar" light he used for testing was visible at 500 feet and remained visible until the battery died. Dennis answered in the affirmative when asked if the light, "would have been pointing right at Mr. Dalton" in the moments leading up to the accident had it been illuminated.
 

 Officer Goodale investigated the accident and prepared a Mooresville Police Department Traffic Crash Reconstruction Report ("the accident report"), which was admitted into evidence and published to the jury. Officer Goodale inspected the factory installed headlamp housing of the moped and debris at the accident scene. The plastic headlamp assembly did not contain a bulb. The headlamp assembly required a bulb to be placed inside, turned clockwise, and locked into place in the socket. Officer Goodale concluded the metal portion of the bulb that locks into place would have remained present in the socket, even if the bulb had been destroyed in the crash. He concluded Scheffer's moped did not have a functioning headlamp at the time of the accident.
 

 *552
 
 Officer Goodale sifted through the debris from the accident and found a small LED Blackburn Flea light. Velcro was attached to the left handlebar of the moped. One of Scheffer's co-workers told Officer Goodale that Scheffer had attached a "bike light" to his moped, which resembled the LED light found at the accident scene. The co-worker also stated Scheffer's front, factory-installed headlamp on the moped was broken due to another collision Scheffer was involved in
 
 *539
 
 approximately one month prior to the collision with Defendant.
 

 Cockrell testified he estimated Scheffer was driving his moped approximately forty to fifty miles per hour and "maybe faster" when Scheffer passed by his vehicle. The manufacturer specifications for Scheffer's moped were incorporated into the accident report. The specifications state the moped has a top speed of twenty-seven miles per hour. Dennis testified the moped's engine did not appear to have been modified or exchanged. Dennis opined Scheffer was driving the moped at a speed of not less than nineteen miles per hour and not more than thirty-two miles per hour.
 

 No evidence was presented to show alcohol contributed to the accident. The trial court granted Plaintiff's motion
 
 in limine
 
 regarding any "mention, reference, implication, or depiction of alcohol." At trial, defense counsel moved to introduce the Mooresville Police Department's complete investigative file as Defendant's Exhibit 1. Plaintiff's counsel objected because references to alcohol were contained on the two DMV-349 Forms contained within the file. The portions of the DMV-349 Forms containing the reference to Scheffer's drug or alcohol use was redacted prior to submission to the jury. The portion of the DMV-349 Form intended for the officer to record Defendant's drug or alcohol use was not redacted. On the handwritten DMV-349 Form, the fields for Defendant's drug and alcohol use were left blank. On the other typewritten form, the fields for Defendant's drug and alcohol use were filled with zeros.
 

 The report also states Scheffer was wearing non-reflective clothing, including a black leather jacket and chaps, and a gray helmet. The moped was also painted black. Officer Goodale testified a street light was located near the southwest corner of the intersection, but it did not illuminate the area where the crash had occurred.
 

 At the close of Defendant's evidence, Plaintiff moved for a directed verdict on the issue of contributory negligence. The trial court denied the motion. The trial court submitted four theories of negligence on the part of Defendant to the jury: (1) failure to use ordinary care by failing to
 
 *553
 
 maintain a reasonable look-out; (2) failure to use ordinary care by failing to keep his vehicle under proper control; (3) violation of a safety statute by failing to yield the right-of-way when turning left in an intersection; and, (4) violation of a safety statute by failing to keep his vehicle in the proper lane of travel.
 

 The trial court declined Plaintiff's request for a jury instruction on the doctrine of last clear chance and stated "[b]ecause all the evidence shows that [Defendant] never saw [Scheffer]." The court determined Defendant could not have had the last clear chance to avoid Scheffer if he never saw him.
 

 The jury returned a verdict finding Defendant's negligence proximately caused Scheffer's death, and that Scheffer was contributorily negligent. Plaintiff filed a motion for judgment notwithstanding the verdict and motion for new trial, which were both denied. Plaintiff appeals.
 

 II. Issues
 

 Plaintiff argues the trial court erred by: (1) allowing a partially redacted accident report showing evidence of alcohol use to be published to the jury; and, (2) submitting the issue of contributory negligence to the jury and denying Plaintiff's request to submit the issue of last clear chance to the jury.
 

 III. Accident Report
 

 Plaintiff argues the trial court erred by allowing Defendant to introduce the partially redacted accident report into evidence, which redacted the drug and alcohol use section of the accident report pertaining to Scheffer, but showed no drug or alcohol use on the part referring to Defendant.
 

 A. Standard of Review
 

 " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen.Stat. § 8C-1, Rule 401 (2013). "Evidence which is not relevant is not admissible." N.C. Gen.Stat. § 8C-1, Rule 402 (2013). "Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed
 
 *540
 
 under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal."
 
 Dunn v. Custer,
 

 162 N.C.App. 259
 
 , 266,
 
 591 S.E.2d 11
 
 , 17 (2004) (citation and quotation marks omitted).
 
 *554
 
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" N.C. Gen.Stat. § 8C-1, Rule 403 (2013). The standard of review regarding a Rule 403 determination is abuse of discretion.
 
 State v. Beckelheimer,
 

 366 N.C. 127
 
 , 130,
 
 726 S.E.2d 156
 
 , 159 (2012). "An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Ward,
 

 364 N.C. 133
 
 , 139,
 
 694 S.E.2d 738
 
 , 742 (2010) (citations and quotation marks omitted).
 

 When considering evidentiary errors on appeal, "[t]he burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred."
 
 Suarez v. Wotring,
 

 155 N.C.App. 20
 
 , 30,
 
 573 S.E.2d 746
 
 , 752 (2002) (citations omitted),
 
 disc. rev. denied and cert. denied,
 

 357 N.C. 66
 
 ,
 
 579 S.E.2d 107
 
 (2003).
 

 B. Prejudice
 

 The Mooresville Police Department's investigative file contains both a handwritten DMV-349 Form and a typewritten DMV-349 Form. The typewritten form is dated 29 November 2010, two days after the date of the accident. The handwritten form is dated 2 March 2011.
 

 The forms are divided into columns, each with parallel, identical fields to be evaluated for each party involved in an accident. The parties' drug and alcohol information is listed side by side on the form. On the typewritten form, Scheffer's column included the following fields:
 

 No. 37: Alcohol/Drugs Suspected 7
 

 No. 38: Alcohol/Drugs Test 3
 

 No. 39: Results (if known) 5
 

 Those fields were marked "0" in Defendant's column. The handwritten form contained the same fields but with different results for Scheffer:
 

 No. 37: Alcohol/Drugs Suspected 2
 

 No. 38: Alcohol/Drugs Test 3
 

 No. 39: Results (if known) 2/.03
 

 Those fields were left blank in Defendant's column.
 

 At Plaintiff's request Scheffer's information on both the handwritten and typewritten forms was redacted prior to submission to the jury.
 

 *555
 
 The fields for drugs and alcohol were redacted for Scheffer with what appears to be correction fluid or tape. Those fields on the forms were not redacted for Defendant.
 

 Plaintiff argues that publishing the irrelevant alcohol status of Defendant next to the redacted alcohol status of Scheffer highlighted the fact that those fields were hidden in Scheffer's column. Plaintiff asserts this inevitably raised a presumption of Scheffer's guilt.
 

 Defendant's use or non-use of alcohol would be relevant. The accident report was admitted into evidence without objection and contains the following information:
 

 The driver of Unit Two (Nathaniel E. Dalton) remained on scene and was interviewed and gave a written statement later on that night. He was questioned by several officers, including myself, just moments after the collision to determine if there were signs of impairment. I spoke with Mr. Dalton while he sat in the rear of a patrol car in depth about the collision. Mr. Dalton appeared normal and there were no signs of impairment noted.
 

 Officer Goodale's trial testimony was similar. He testified he observed Defendant from a close proximity and did not notice any signs of alcohol consumption or impairment. The evidence presented through the crash report and Officer Goodale's testimony was the same information plaintiff argues should have been redacted from the DMV-349 Forms.
 

 Our Court has held:
 

 *541
 
 Verdicts and judgments are not to be set aside for mere error and no more. To accomplish this result it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, and that a different result likely would have ensued, with the burden being on the appellant to show this.... Presuming error, [the appellant] has not shown prejudice and we will not speculate whether such error was prejudicial.
 

 Boykin v. Morrison,
 

 148 N.C.App. 98
 
 , 102,
 
 557 S.E.2d 583
 
 , 585 (2001) (citation and quotation marks omitted).
 

 Here, plaintiff has failed to meet his burden of showing the trial court's admission of the "partially redacted" DMV-349 Forms was prejudicial. The information on the forms which Plaintiff claims was erroneously admitted and prejudicial, was also presented, without objection,
 
 *556
 
 through the accident report and Officer Goodale's testimony. This argument is overruled.
 

 IV. Contributory Negligence
 

 Plaintiff argues the trial court erred in submitting the issue of contributory negligence to the jury because Defendant failed to satisfy his burden of showing Scheffer was contributorily negligent. We disagree.
 

 A. Standard of Review
 

 In North Carolina, a plaintiff's right to recover in a personal injury or wrongful death action is barred upon a finding of contributory negligence.
 
 Brewer v. Harris,
 

 279 N.C. 288
 
 , 298,
 
 182 S.E.2d 345
 
 , 350 (1971) ;
 
 Prior v. Pruett,
 

 143 N.C.App. 612
 
 , 622-23,
 
 550 S.E.2d 166
 
 , 173 (2001),
 
 disc. rev. denied,
 

 355 N.C. 493
 
 ,
 
 563 S.E.2d 572
 
 (2002). "In determining the sufficiency of the evidence to justify the submission of an issue of contributory negligence to the jury, [the appellate court] must consider the evidence
 
 in the light most favorable to the defendant and disregard that which is favorable to the plaintiff.
 
 "
 
 Prevette v. Wilkes General Hospital, Inc.,
 

 37 N.C.App. 425
 
 , 427,
 
 246 S.E.2d 91
 
 , 92 (1978) (emphasis supplied) (citation omitted). "If different inferences may be drawn from the evidence on the issue of contributory negligence, some favorable to [the] plaintiff and others to the defendant, it is a case for the jury to determine."
 

 Id.
 

 (citation and quotation marks omitted).
 

 "If there is more than a scintilla of evidence that plaintiff is contributorily negligent, the issue is a matter for the jury, not for the trial court."
 
 Cobo v. Raba,
 

 347 N.C. 541
 
 , 545,
 
 495 S.E.2d 362
 
 , 365 (1998) (citation and quotation marks omitted). Any evidence that Scheffer was contributorily negligent in that "he failed to use ordinary care to protect himself from the asserted injury, or that his behavior was a proximate cause of his injury, would dictate the submission of this issue to the jury."
 

 Id.
 

 B. Analysis
 

 "Contributory negligence is the breach of duty of a plaintiff to exercise due care for his or her own safety, such that the plaintiff's failure to exercise due care is the proximate cause of his or her injury."
 
 Prior,
 

 143 N.C.App. at 622
 
 ,
 
 550 S.E.2d at 173
 
 (citation omitted). "Plaintiff may be contributorily negligent if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety."
 
 Smith v. Fiber Controls Corp.,
 

 300 N.C. 669
 
 , 673,
 
 268 S.E.2d 504
 
 , 507 (1980).
 

 *557
 
 Two elements, at least, are necessary to constitute contributory negligence: (1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury.... There must be not only negligence on the part of the plaintiff, but
 
 contributory
 
 negligence, a real causal connection between the plaintiff's negligent act and the injury, or it is no defense to the action.
 

 Ellis v. Whitaker,
 

 156 N.C.App. 192
 
 , 195,
 
 576 S.E.2d 138
 
 , 141 (2003) (citations omitted) (emphasis in original).
 

 The trial court instructed the jury as follows:
 

 With respect to the defendant's first contention [pertaining to contributory negligence], the Court would instruct you as follows:
 

 The lighting requirements for a moped are different from the lighting requirements
 
 *542
 
 for a motorcycle. A moped is a vehicle that has two or three wheels, no external shifting device, and a motor that does not exceed 50 cubic centimeters piston displacement, and cannot propel the vehicle at a speed greater than 30 miles an hour on a level surface. A motorcycle is a vehicle having a saddle for the use of a rider and designed to travel on not more than three wheels in contact with the ground, including motor scooters and motor driven bicycles.
 

 The motor vehicle law provides that every moped shall be operated upon a highway during the period from sunset to sunrise, and shall carry on the left side one or more lighted lamps or lanterns projecting a white light visible under normal atmospheric conditions from a distance of not less than 500 feet to the front of such vehicle, and visible under light conditions from a distance of not less than 500 feet to the rear of such vehicle. The Court instructs you that a lamp is a light constructed to project a powerful beam and to defuse this beam through a reflector and special lens in order to better illuminate the road ahead in serving as a warning to other vehicles. A failure to carry or maintain such lighting is negligence within itself.
 

 With respect to the defendant's second contention, the motor vehicle law provides it is unlawful to operate a
 
 *558
 
 motor vehicle on a highway at a speed greater than reasonable and prudent under the conditions then existing. A violation of this safety statute is negligence in and of itself. In determining whether the vehicle was being operated at a speed greater than was reasonable and prudent, you should consider all the evidence about the physical features at the scene, the hour of day or night, the weather conditions, the extent of other traffic, the width and nature of the roadway, and other such circumstances as are shown to exist. Considering all such circumstances, the rate of speed may be unreasonable and prudent even though it is within the posted maximum speed limit at the time and at the scene.
 

 Evidence was presented tending to show: (1) Scheffer was operating a moped on Highway 115 on a dark night; (2) Scheffer had attached a battery-powered bicycle light to the left handlebar of his moped because the factory installed headlamp had been broken a month earlier; (3) Turner, who passed Scheffer on his moped 1.15 miles from the accident scene, described the light on the moped as "a very, very faint little light," and she did not see the light until it was two car lengths away; (4) Cockrell did not see Scheffer until he was passing right in front of his car and was "certain" he did not see a light on the moped; (5) Defendant did not see the light from Scheffer's moped or anything else prior to executing the left turn; and (6) no street lights illuminated the area where the collision occurred.
 

 The trial court was required to submit the issue of contributory negligence to the jury, if Defendant presented "more than a scintilla" of evidence to show Scheffer drove his moped without sufficient lighting to be adequately seen by other drivers or in an imprudent manner.
 
 Cobo,
 

 347 N.C. at 545
 
 ,
 
 495 S.E.2d at 365
 
 . Considering the evidence in the light most favorable to Defendant, and "disregard[ing] that which is favorable to [P]laintiff," sufficient evidence required the trial court to submit the issue of Scheffer's contributory negligence to the jury.
 
 Prevette,
 

 37 N.C.App. at 427
 
 ,
 
 246 S.E.2d at 92
 
 . This argument is overruled.
 

 V. Last Clear Chance
 

 Plaintiff asserts the trial court erred in failing to submit the issue of last clear chance to the jury. Plaintiff argues the doctrine of last clear chance applies because, after the oncoming car passed, Defendant failed to look down the highway to determine if any other vehicles were approaching before executing the left turn. We agree.
 

 *559
 

 A. Standard of Review
 

 The issue of last clear chance "[m]ust be submitted to the jury if the evidence, when viewed in the
 
 light most favorable to the plaintiff,
 
 will support a reasonable inference of each essential element of the doctrine."
 
 Culler v. Hamlett,
 

 148 N.C.App. 372
 
 , 379,
 
 559 S.E.2d 195
 
 , 200 (2002) (emphasis supplied) (citation omitted). Plaintiff
 
 *543
 
 bears the burden to show and establish whether the doctrine of last clear chance is applicable to the facts of his case.
 
 Vernon v. Crist,
 

 291 N.C. 646
 
 , 654,
 
 231 S.E.2d 591
 
 , 596 (1977).
 

 B. Analysis
 

 Our Supreme Court has articulated the elements a plaintiff must establish to invoke the doctrine of last clear chance as follows:
 

 Where an injured [plaintiff] who has been guilty of contributory negligence invokes the last clear chance or discovered peril doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the [plaintiff] negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the [plaintiff's] perilous position and his incapacity to escape from it before the endangered [plaintiff] suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered [plaintiff] by the exercise of reasonable care after he discovered, or should have discovered, the [plaintiff's] perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered [plaintiff], and for that reason struck and injured him.
 

 Wade v. Jones Sausage Co.,
 

 239 N.C. 524
 
 , 525,
 
 80 S.E.2d 150
 
 , 151 (1954) (citations omitted).
 

 "In situations where this doctrine applies, the focus is not on the preceding negligence of the defendant or the contributory negligence of the plaintiff which would ordinarily defeat recovery."
 
 Culler,
 

 148 N.C.App. at 379
 
 ,
 
 559 S.E.2d at
 
 200-01 (citing
 
 Clodfelter v. Carroll,
 

 261 N.C. 630
 
 ,
 
 135 S.E.2d 636
 
 (1964) ). "A negligent plaintiff who is unable to avoid the harm placing [him] in helpless peril immediately before the accident which results in [his] injury may recover against a defendant who has
 
 *560
 
 the means and ability to avoid the accident but fails to do so."
 
 Overton v. Purvis,
 

 154 N.C.App. 543
 
 , 545,
 
 573 S.E.2d 219
 
 , 224 (2002) (Thomas, J., dissenting) (emphasis removed) (citation omitted),
 
 rev'd for reasons stated in dissenting opinion,
 

 357 N.C. 497
 
 ,
 
 586 S.E.2d 265
 
 (2003).
 

 Evidence was presented tending to show that, "immediately before the accident," Scheffer "negligently placed himself in a position of peril from which he could not escape."
 
 Id.;
 

 Wade,
 

 239 N.C. at 525
 
 ,
 
 80 S.E.2d at 151
 
 . Evidence was presented tending to show Plaintiff's moped was insufficiently illuminated and Defendant did not see Scheffer before executing the left turn. Plaintiff's expert, Dennis, testified Scheffer's moped created thirty-five feet of skid marks on the road prior to the accident. This evidence raises a "reasonable inference" to suggest Scheffer's attempt to extricate himself from peril.
 
 Overton,
 

 154 N.C.App. at 545
 
 , 573 S.E.2d at 224.
 

 Scheffer's perilous situation did not occur solely as a result of driving his moped without sufficient lighting. His perilous position occurred when Defendant began executing the left turn off Highway 115 toward Steam Engine Road into on-coming traffic, rendering Scheffer unable to stop his moped in time to escape without injury. Scheffer's peril began at the moment he applied his brakes in an attempt to stop his moped before hitting Defendant's car.
 

 With regard to the second element of the doctrine of last clear chance, Plaintiff argues Defendant, by exercising reasonable care and maintaining a proper lookout before executing the left turn, "knew, or by the exercise of reasonable care could have discovered" Scheffer.
 
 Wade,
 

 239 N.C. at 525
 
 ,
 
 80 S.E.2d at 151
 
 . The trial court instructed the jury that Defendant owed Scheffer a duty to maintain a proper lookout for oncoming traffic, keep his vehicle under proper control, yield to oncoming traffic when turning left at the intersection, and maintain his vehicle in the proper lane of travel. Neither the verdict sheet nor the record indicates under which theory or theories the jury found Defendant was negligent.
 

 *544
 
 Viewed in the light most favorable to Plaintiff, the evidence is sufficient to submit the question to the jury of whether Defendant, after he began to turn left, "by the exercise of reasonable care
 
 could have
 
 discovered" Scheffer's peril.
 

 Id.
 

 (emphasis supplied). This is an issue of fact appropriate for the jury, and not for a court to determine as a matter of law.
 

 With regard to the third element, it is also a jury issue to determine whether Defendant "had the time and means to avoid injury to [Scheffer] by the exercise of reasonable care after he discovered, or could have
 
 *561
 
 discovered" Scheffer's peril.
 

 Id.
 

 Evidence was presented which tends to show as Scheffer saw Defendant's car begin to turn left, he applied his brakes, and his moped left thirty-five feet of skid marks before striking the front right corner of Defendant's car. A question of fact exists to whether Defendant could have taken some action to avoid Scheffer striking his vehicle after he knew, or with the "exercise of reasonable care could have discovered," Scheffer approaching him.
 

 Id.
 

 It is well established that to satisfy the third element of last clear chance there must be "an appreciable interval of time between plaintiff's negligence and his injury during which the defendant, by the exercise of ordinary care, could or should have avoided the effect of plaintiff's prior negligence."
 
 Ingram v. Smoky Mountain Stages, Inc.,
 

 225 N.C. 444
 
 , 448,
 
 35 S.E.2d 337
 
 , 340 (1945) ;
 
 see also
 

 Bass v. Johnson,
 

 149 N.C.App. 152
 
 , 158,
 
 560 S.E.2d 841
 
 , 846 (2002) (holding the trial court did not err in finding defendant did not have the time and means to avoid the accident based on the defendant's testimony that he "couldn't see [the plaintiff's car] until it was too late.");
 
 Watson v. White,
 

 309 N.C. 498
 
 , 506,
 
 308 S.E.2d 268
 
 , 273 (1983) (holding that while the interval of 1.28 seconds may have been sufficient for a last possible chance to avoid an injury, such interval did not amount to a last clear chance). The doctrine of last clear chance "contemplates a last 'clear' chance, not a last 'possible' chance to avoid the accident; it must have been such a chance as would have enabled a reasonably prudent man in like position to have acted effectively."
 
 Battle v. Chavis,
 

 266 N.C. 778
 
 , 781,
 
 147 S.E.2d 387
 
 , 390 (1966).
 

 In
 
 Bass
 
 and
 
 Watson,
 
 both the defendants saw the plaintiffs, but neither had sufficient time to avoid the accident.
 
 Bass,
 

 149 N.C.App. at 158
 
 ,
 
 560 S.E.2d at
 
 846 ;
 
 Watson,
 

 309 N.C. at 506
 
 ,
 
 308 S.E.2d at 273
 
 . Here, issues exist as to whether Defendant should have discovered Scheffer's peril, and whether sufficient "time and means" existed to avoid the accident.
 
 See
 

 Harrison v. Lewis,
 

 15 N.C.App. 26
 
 , 32-33,
 
 189 S.E.2d 662
 
 , 665-66 (1972) (holding the doctrine of last clear chance was properly submitted to the jury where, had a driver maintained a proper lookout, he could have observed a pedestrian in the act of crossing the highway and could have avoided striking him by merely turning slightly).
 

 Sufficient evidence was also presented for the jury to determine the fourth element, whether Defendant negligently failed to use the available time and means to avoid injury to Scheffer. Defendant was asked whether he "look[ed] before [he] turned left." He stated, "Yes, I was already looking in the direction of travel." Defendant's statement is unclear and could be reasonably interpreted that he was looking through the intersection, or that he was looking toward the left. Viewed
 
 *562
 
 in the light most favorable to Plaintiff, evidence tends to raise an issue of fact of whether Defendant adequately looked through the intersection, behind the passing car, to determine if his path was clear before entering the oncoming lane of travel.
 

 Where "the evidence, when viewed in the light most favorable to the plaintiff, will support a reasonable inference of each essential element of the doctrine," the issue of last clear chance should have been submitted to the jury.
 
 Nealy v. Green,
 

 139 N.C.App. 500
 
 , 504,
 
 534 S.E.2d 240
 
 , 243 (2000) (citation omitted). Here, evidence was presented tending to show each element of the doctrine to support a jury instruction on the doctrine of last clear chance. The trial court should permit the jury to determine the issue.
 

 *545
 

 VI. Conclusion
 

 The trial court did not commit prejudicial error by allowing the accident report into evidence, which showed redactions for Scheffer's alcohol use and zeros or blanks for Defendant's alcohol use. Other unchallenged and admitted evidence showed Defendant was not under the influence of alcohol through other evidence and testimony. Plaintiff failed to show any prejudice to warrant a different result at trial.
 

 The evidence, viewed in the light most favorable to Defendant, was sufficient to allow the jury to consider the issue of contributory negligence. The trial court did not err in submitting this issue to the jury.
 

 Evidence was presented tending to raise an issue of fact regarding the four elements of last clear chance. The jury should be allowed to determine whether Defendant had the last clear chance to avoid the accident. We affirm in part, reverse in part, and remand for a new trial.
 

 AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR NEW TRIAL.
 

 Judges BRYANT and GEER concur.