**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-2368**

———————

ANTHONY GORDON MATHIS

       Plaintiff - Appellant

v.

TERRA RENEWAL SERVICES, INC.; DARLING INGREDIENTS, INC.

       Defendants - Appellees

———————

LJC ENVIRONMENTAL, LLC

       Third Party Defendant.

———————

Appeal from the United States District Court for the Western District of North Carolina at Charlotte. Robert J. Conrad, Jr., District Judge. (3:19-cv-00180-RJC-DSC)

———————

Argued: May 4, 2023                    Decided: June 5, 2023

———————

Before WILKINSON, HARRIS, and RICHARDSON, Circuit Judges.

———————

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Harris and Judge Richardson joined.

———————

**ARGUED:** Peter Harrington Burke, CR LEGAL TEAM, LLP, Birmingham, Alabama; David J. Ventura, Charlotte, North Carolina, for Appellant. Robert J. King III, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP, Greensboro, North Carolina;

Jeffrey Brandt Kuykendal, MCANGUS, GOUDELOCK & COURIE, LLC, Charlotte, North Carolina, for Appellees. **ON BRIEF:** Karonnie R. Truzy, CRUMLEY ROBERTS, LLP, Greensboro, North Carolina, for Appellant.  John W. Ormand III, Daniel F.E. Smith, Matthew B. Tynan, Amanda S. Hawkins, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP, Greensboro, North Carolina, for Appellees.

---

WILKINSON, Circuit Judge:

Anthony Gordon Mathis sued Terra Renewal Services, Inc. and its parent company Darling Ingredients, Inc. after an accident atop a pressurized tanker left him a paraplegic. He alleged that their negligence led to the accident that injured him. The case went to trial, where the jury found that, though Terra and Darling were negligent, Mathis was contributorily negligent, thus barring his recovery. Mathis appeals, alleging that the district court committed several reversible errors. His main contention is that the district court erroneously rejected his "sudden emergency" contention and his claim for gross negligence as a matter of law. We are unpersuaded, and thus affirm the jury's verdict.

I.

A.

Mathis worked as a truck driver for LJC Environmental, LLC (LJC). LJC executed a subcontract in May 2015 with Terra Renewal Services, Inc. (Terra) and its parent company Darling Ingredients, Inc. (Darling) for the transportation of industrial residuals, referred to as "sludge." The sludge was non-hazardous liquid waste generated by food production to be later used as fertilizer.

The subcontract provided that LJC would transport industrial residuals to and from Terra's customer locations while Terra would provide specific equipment for that work. Such equipment included vacuum pressurized tanker-trailers. The subcontract required that any equipment Terra supplied be "in good condition and in good working order." J.A. 1758. LJC was responsible for identifying needed repairs or maintenance work and bringing the trailers to a location where such work could be performed. Any maintenance

3

requested on the tankers had to be specifically approved by Terra, including in emergency situations. However, LJC was "responsible for safety related to and during the performance of the work" under the subcontract. J.A. 1759.

Loading and unloading these tankers required them to be airtight to maintain a certain amount of pressure. If too much pressure built up in the tanker, however, it could cause a rupture. To prevent this, the tankers were supplied with pressure relief safety equipment, such as a pressure relief valve, designed to release air from the tanker at a specified pound per square inch (PSI). The pressure relief valves allowed substantial pressure to build in the tanker, only releasing the pressure when it reached a predetermined level. Drivers also vented the tankers during loading through the "top hatch," also known as manway cover, or through a secondary "cannister" via an attached "vent hose." J.A. 1197, 1885. LJC further required that the manway cover be open at all times during loading.

## B.

On March 10, 2017, Mathis drove Tanker 11,500, one supplied by Terra to LJC, to Hunter Farms LLC in High Point, North Carolina for loading. Not only had he picked up and dropped off hundreds of pressurized loads in his career, but he had also loaded at Hunter Farms once a week for all of 2017. Mathis was an experienced truck driver—he had a Class A commercial driver's license with a tanker endorsement, the gold standard for truck drivers in this field.

Upon arriving, Mathis began to load the sludge into the tanker. Mathis did not open the manway cover, but rather relied on the vent hose to regulate the pressure within the

4

tanker during loading. At some point during the process, however, Mathis was alerted to the tanker emitting a hissing sound. He subsequently checked the vent hose to find that there was no air coming out, so no pressure was being released from the tanker despite the pressure building. Mathis and Hunter Farms employee Mitch Young determined that the tanker was holding too much pressure, and Young turned off the loading pump.

Mathis chose to investigate the hissing further. Video footage shows Mathis climb atop the tanker and stand over the manway cover, a hatch on top of the tanker that can be opened to load the tanker from above. According to Young, Mathis stated he was going to have to loosen the manway cover to relieve pressure from the tanker. The manway cover, however, warned: "DANGER: RELIEVE ALL TANK PRESSURE BEFORE OPENING COVER." J.A. 1890. Although Young could not see exactly what Mathis was doing atop the tanker, he observed that Mathis appeared to be "bouncing" on the manway lid to open it. Suppl. App., Trial Approved Young Dep. Video Designation at 7:26–8:52, 25:32–26:37. Shortly thereafter, the manway cover was blown off. Mathis was thrown into the air and against a building before he landed on the ground. He suffered permanent injuries from the accident and is now paraplegic. Because of a brain injury from the accident, Mathis has no memory of this incident. In total, 44 seconds elapsed from when Mathis discovered that air was not coming out of the vent hose to when the explosion occurred.

## C.

After the accident, Mathis filed a complaint against Terra and Darling, alleging negligence, gross negligence, breach of warranty, and seeking compensatory and punitive damages. Mathis accused Terra and Darling of failing to properly inspect and maintain the

5

pressure safety equipment on Tanker 11,500. Mathis claimed that a failure in the pressure safety valve caused Tanker 11,500 to hold a dangerous level of pressure, that this pressure caused the manway cover to blow off the tanker while Mathis was on top of it, and that Terra and Darling knew of problems with Tanker 11,500 but refused to take the tanker out of service. Terra and Darling responded that Mathis's own contributory negligence caused his accident. Terra also filed a third-party complaint against LJC. Mathis's negligence and gross negligence claims proceeded to trial.

At the close of Mathis's evidence, Terra and Darling moved for judgment as a matter of law in their favor on several issues, including the arguments presented by Mathis regarding North Carolina's "sudden emergency" doctrine. *See* J.A. 928. This state-law tort doctrine "excuses the actions of a party which may normally constitute negligence where the party acted *in response* to a sudden emergency which he did not cause." *Goins v. Time Warner Cable Se., LLC*, 812 S.E.2d 723, 726 (N.C. App. 2018) (emphasis in original). Terra and Darling also moved for judgment as a matter of law on Mathis's gross negligence claim.

The district court granted the motion on both issues. On sudden emergency, the court believed that this was "not a case where a person through no fault of his own is suddenly and unexpectedly confronted with imminent danger, whether actual or apparent" as a "reasonable, prudent person would not have done what [Mathis] did" when he climbed atop the trailer to open the manway cover. J.A. 955–56. The court thus ruled that it would not give a jury instruction on sudden emergency. J.A. 956. As to gross negligence, the court

6

found that Mathis presented legally insufficient evidence of "willful and wanton conduct" by Terra and Darling to warrant proceeding with this claim. J.A. 955.

The jury eventually returned a verdict finding negligence by Terra and Darling and contributory negligence by Mathis, which barred Mathis's recovery under North Carolina law. Mathis moved for a new trial, arguing that the district court erred by granting the defendants' earlier FRCP 50(a) motion on sudden emergency and gross negligence, and that the jury should have been instructed as to these issues. The district court denied Mathis's motion for a new trial and entered judgment in favor of Terra and Darling.

Mathis now appeals. He argues principally that the district court erred in granting judgment as a matter of law on the sudden emergency issue and his gross negligence claim. He further believes that the court erred in denying him a new trial on those same grounds. He also assigns error to the district court's exclusion of certain testimony and evidence. He last argues that we should overturn the jury verdict on contributory negligence. We address each issue in turn.

## II.

In civil jury trials, a district court may grant a motion for judgment as a matter of law if "a party has been fully heard on an issue . . . and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). We review the grant of a Rule 50(a) motion *de novo*, "viewing the facts and drawing all reasonable inferences from them in favor of the nonmoving party." *United States Sec. & Exch. Comm'n v. Clark*, 60 F.4th 807, 812 (4th Cir. 2023). The operative question is whether the evidence compels "but one reasonable conclusion as to

7

the proper judgment." *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996) (internal quotations omitted). Though courts "must not weigh evidence, determine witness credibility, or substitute judgment of the facts for that of the jury," the nonmoving party "must present more than a scintilla of evidence to support its claim." *Clark*, 60 F.4th at 812 (internal quotations and alterations omitted). Sitting as we are in diversity jurisdiction, we must apply the law of the forum state, which in this case is North Carolina. *See Moore v. Equitrans, L.P.*, 27 F.4th 211, 220 (4th Cir. 2022).

## A.

We begin with Mathis's contention that the district court erred in withholding his argument on the sudden emergency doctrine from the jury. According to Mathis, the evidence presented during his-case-in-chief showed that he was confronted with a sudden emergency when Tanker 11,500 began hissing and the actions he took during that emergency were reasonable.

Negligence under North Carolina law, as in other states, requires a plaintiff to show: "(1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Stein v. Asheville City Bd. of Educ.*, 626 S.E.2d 263, 267 (N.C. 2006). The standard of negligence "is always the conduct of the reasonably prudent man, or the care which a reasonably prudent man would have used under the circumstance." *Diamond v. McDonald Serv. Stores*, 191 S.E. 358, 359 (N.C. 1937).

Sudden emergency doctrine, however, "provides a less stringent standard of care for one who, through no fault of his own, is suddenly and unexpectedly confronted with imminent danger to himself or others." *Holbrook v. Henley*, 454 S.E.2d 676, 677–78 (N.C.

8

App. 1995). It asks whether, "taking the emergency into account, a party acted as a reasonable person would, given similar circumstances." *Chadhi v. Mack*, -- S.E.2d ----, 2023 WL 3184928, at *3 (N.C. App. 2023). Under the sudden emergency doctrine, therefore, a party "is not held to the same coolness, accuracy of judgment or degree of care that is required of him under ordinary circumstances." *Bondurant v. Mastin*, 113 S.E.2d 292, 298 (N.C. 1960).

To receive a jury instruction on the sudden emergency doctrine, a party must show "first, [he] perceived an emergency situation and reacted to it, and second, the emergency was not created by plaintiff's negligence." *Carrington v. Emory*, 635 S.E.2d 532, 534 (N.C. App. 2006). North Carolina courts are wary of allowing argument on sudden emergency to come before the jury unless there is "substantial evidence" of these two prongs. *Id.* This hesitancy is evinced by the fact that the doctrine is used predominantly in cases involving car crashes. *See, e.g.*, *Wiggins v. E. Carolina Health-Chowan, Inc.,* 760 S.E.2d 323, 328 (N.C. App. 2014); *Carrington*, 635 S.E.2d at 534 (explaining that a sudden emergency is one that "compels a party to act instantly to avoid a collision or injury") (internal quotations omitted). "[T]he party asserting the doctrine must have perceived the emergency circumstance and reacted to it." *Long v. Harris,* 528 S.E.2d 633, 637 (N.C. App. 2000) (internal quotations omitted).

1.

Mathis argues that he both perceived an emergency when he heard hissing from Tanker 11,500 and reacted instantly by trying to alleviate pressure through the center manway cover on top of the tanker. Although Mathis's brain injury prevented him from

9

testifying about his perceptions of the emergency, he argues that the objective evidence entitles him to a jury determination on this issue. He points to the fact that only 44 seconds passed from when he discovered no air coming from the vent hose to when the manway exploded. He also refers to the testimony of his expert witness, Shane Darville, who opined that the pressure relief valve on Tanker 11,500 was not appropriate for the tanker and that its pressure safety equipment was poorly maintained, which resulted in a potential emergency.

The evidence that came out during Mathis's case undermines these arguments, however, and "the only conclusion a reasonable jury could draw from the evidence" is that there was no sudden emergency. *Sales v. Grant*, 158 F.3d 768, 775 (4th Cir. 1998). First, and most daunting for Mathis, the video surveillance shows that he did not perceive an emergency at all. Young first heard the hissing sound and alerted Mathis to it. The video shows that Young called Mathis to the rear of the trailer before Mathis climbed atop the tanker. Mathis checked the vent hose and Young entered the building to turn off the pump. Mathis then took an approximately ten second pause before climbing up the tanker. And as he was on top of the tanker, two people walked directly next to the tanker. There was no evidence presented at trial that he did anything to warn them of the danger. All of these actions show that Mathis "did not himself perceive any emergency." *Hairston v. Alexander Tank & Equip. Co.*, 311 S.E.2d 559, 569 (1984) (internal quotations omitted).

Other evidence shows that this situation did not compel "immediate action to avoid injury." *Long*, 528 S.E.2d at 637 (internal quotations omitted). There was testimony during trial that the hissing noise escaping from the tanker was the sound of the air releasing, such

10

that, had Mathis waited, the pressure would have gone down by itself. *See, e.g.*, J.A. 1335–36. This is a far cry from cases in which North Carolina courts have found that immediate action was necessary. *See, e.g., Rodgers v. Thompson*, 123 S.E.2d 785, 789 (N.C. 1962) (jury charge on sudden emergency proper where plaintiff was severely injured from trying to cut off a valve on a tanker truck that was already on fire from a car accident and presented imminent risk of explosion).

2.

Moreover, the emergency was brought about by Mathis's own negligence. Under North Carolina law, a "party cannot by his own negligent conduct permit an emergency to arise and then excuse himself for his actions or omissions on the ground that he was called to act in an emergency." *Long*, 528 S.E.2d at 638 (internal quotations omitted). Mathis brought about the emergency in question by (1) failing to abide by his employer's standard operating procedure in opening the manway cover and (2) not checking the vent hose during the loading process.

It is undisputed that Mathis failed to open the tanker's manway lid before beginning the loading process at Hunter Farms. This action was contrary to LJC's standard operating procedures. LJC required its drivers to "[a]lways have the top manhole cover. . . open during loading." J.A. 1885. Mathis was specifically trained on this requirement, and he confirmed that training via signature. *See* J.A. 1309. When asked, every witness, including Mathis himself, testified that had Mathis opened the center manway cover prior to loading, the tanker could not have held a dangerous level of pressure. *See* J.A. 1116, 1170-71, 1238, 1307, 1489–90.

11

Mathis similarly failed to make sure that air was coming out of that vent hose. When venting the tanker using the secondary cannister and the vent hose, Mathis both knew that he had to monitor the end of the vent hose for airflow frequently throughout the loading process and stay within close range. J.A. 1494, 1505. Other witnesses confirmed the necessity of these practices. *See* J.A. 1099, 1240, 1335. Mathis further admitted that the tanker pressurized while he was not monitoring the vent hose. J.A. 1494. Surveillance video confirms that Mathis was not monitoring the vent hose for lengthy periods of time. *See* J.A. 1335.

The question here is whether Mathis knew or "in the exercise of reasonable care should have known" that his actions could result in a dangerous build-up of pressure within Tanker 11,500. *Sobczak v. Vorholt*, 640 S.E.2d 805, 813 (2007). Mathis failed to follow his employer's standard operating procedures by opening the manway cover and failed to monitor the vent hose for proper air flow, actions which he knew could prevent the pressurization of a tanker. His failure to do either resulted in the situation he faced on March 10, 2017.

Last, the sudden emergency doctrine would still not apply because Mathis did not react reasonably to the situation. When faced with a sudden emergency, a plaintiff "must still act, after being confronted with the emergency, *as a reasonable person so confronted would then act.*" *Rodgers v. Carter*, 146 S.E.2d 806, 810 (N.C. 1966) (emphasis added). Upon realizing that Tanker 11,500 was holding a dangerous amount of pressure, Mathis took it upon himself to climb fully atop the tanker, which was also a violation of LJC policy. *See* J.A. 1772. Mathis then attempted to loosen the manway cover while he was on

12

top of it. Witnesses testified during his case-in-chief that a high-quality version of the surveillance video showed him kicking the manway cover loose. *See* J.A. 1330–31. The cover itself stated, "DANGER: RELIEVE ALL TANK PRESSURE BEFORE OPENING COVER." J.A. 1311, 1890. Mathis himself knew that opening the manway lid on a pressurized tanker was a bad idea, describing it as "ignorant as hell." J.A. 1486.

In sum, the evidence compels the conclusion that there was no sudden emergency. It further shows that any emergency was caused by Mathis's own negligence. And finally, the sudden emergency doctrine does not excuse Mathis's unreasonable actions taken after the supposed emergency arose. The district court thus did not err in not submitting the question of sudden emergency to the jury.

B.

Mathis also contends that the district court erred in granting judgment as a matter of law to Terra and Darling on his gross negligence claim. This we can dispose of easily. Under North Carolina law, gross negligence is "conduct that falls somewhere between ordinary negligence and intentional conduct." *Yancey v. Lea*, 550 S.E.2d 155, 157 (N.C. 2001). "An act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others, i.e., a conscious disregard of the safety of others." *Id.* at 158 (emphases omitted). Whereas ordinary negligence denotes the idea that a defendant "should have known the probable consequences of his act," gross negligence "rests on the assumption that he knew the probable consequences, but was recklessly, wantonly, or intentionally indifferent to the results." *Clayton v. Branson*, 613 S.E.2d 259, 265–66 (N.C. App. 2005) (internal

13

quotations omitted). North Carolina courts reserve gross negligence for extreme situations. *See id.* at 265.

Mathis argues: (1) that the pressure relief valve on Tanker 11,500 was not working and (2) that Terra and Darling had specific knowledge of issues with Tanker 11,500 holding too much pressure but refused to take it out of service.

On the first point, Mathis did not present evidence that the pressure relief valve was not working on the day in question. His expert did not opine to that effect. *See* J.A. 1272. Indeed, any malfunction was caused by Mathis's own negligence in failing to properly vent the tanker. Mathis also argues, however, that Terra and Darling should have been conducting preventative maintenance on the relief valve, which was not part of their regular maintenance program. Witnesses testified that they would *expect* a company like Terra to inspect the pressure safety valves during preventative maintenance. *See* J.A. 1220; Supp. Appx., Trial Approved Vaden Dep. Video Designation at 34:18–34:29. This does not, however, rise to the level of gross negligence, as Mathis presented no evidence that Terra "knew of the probable consequences" of failing to inspect the pressure relief valve in preventative maintenance "but was recklessly, wantonly or intentionally indifferent to the results." *Wagoner v. North Carolina R. Co.*, 77 S.E.2d 701, 706 (1953). At most, this shows negligence, that Terra and Darling *should have known* of the dangers of failing to regularly inspect the pressure safety equipment.

As to Terra and Darling's specific knowledge of issues with Tanker 11,500, Mathis did not present legally sufficient evidence to meet the high bar of gross negligence. Although another LJC driver told a Terra employee of an incident he had with Tanker

14

11,500 holding pressure and spraying him with sludge when he opened the manway cover, he later admitted that this incident could have been caused by user error. *See* J.A. 1123. The record further reflects that Terra provided substantial and frequent repair and maintenance work on Tanker 11,500 per the terms of its contract with LJC. This maintenance, including a check conducted less than a month before Mathis's accident, did not raise any red flags.

There is, moreover, no evidence that Tanker 11,500 malfunctioned in the thousands of times it was used before Mathis's accident. Thus even taking the evidence in the light most favorable to Mathis, his evidence supports at most negligence, not gross negligence. Any failure by Terra to remove Tanker 11,500 from service was not willful or wanton because such failure was "neither deliberate nor wicked in its purpose." *Sawyer v. Food Lion, Inc.*, 549 S.E.2d 867, 871 (N.C. App. 2001). We accordingly decline to disturb the district court's ruling.

We also find no error in the district court's denial of Mathis's motion for a new trial, which raised the same issues as above and thus falls short for the same reasons. *See Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014) (a district court's denial of a motion for a new trial "will not be reversed save in the most exceptional circumstances) (internal quotations omitted). The sudden emergency and gross negligence claims involved atypical tort doctrines, which would have distracted here from the typical questions of primary and contributory negligence within the jury's unique ability to resolve. The trial court was right to strip matters to their essence, and Mathis's new trial motion was properly denied.

15

III.

We now turn to the remaining assignments of error. Mathis argues that the district court wrongly excluded testimony and reports by North Carolina Department of Labor investigator Lisa Rayborn.

The party challenging a district court's evidentiary ruling faces a "heavy burden," for we review this decision only for abuse of discretion. *Noel v. Artson*, 641 F.3d 580, 591 (4th Cir. 2011). District courts are closer to the evidence presented at trial, and we generally respect their decisions governing its admissibility. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). Moreover, evidentiary rulings are reviewed for harmless error, and we may order a new trial only where the exclusion of evidence "affected the substantial rights of a party." *Wickersham v. Ford Motor Co.*, 997 F.3d 526, 531 (4th Cir. 2021).

Rayborn was tasked by the North Carolina Department of Labor, Occupational Safety and Hazard Division to investigate Mathis's accident. As part of this investigation, she spoke to various LJC employees and others. Other than Terra's in-house counsel, Rayborn did not speak with any Terra employees or obtain statements from them on this matter. Mathis sought to have her testify about the statements made to her during the investigation and her conclusion that Mathis's injuries were caused by Terra's failure to properly maintain the tankers. He also sought to submit Rayborn's reports from this investigation, which included the statements from various LJC employees. The district court granted Terra and Darling's motion *in limine* to exclude Rayborn's testimony "as hearsay, impermissible lay opinion," and as an unqualified expert opinion under *Daubert*

16

*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and to exclude "hearsay included in the North Carolina Department of Labor's investigative materials and reports." J.A. 919–20.

It is unclear exactly what testimony Mathis planned to offer and on what grounds. As to whether Rayborn's testimony should have been allowed as a lay opinion under Federal Rule of Evidence 701, we have previously held that such opinions must be "based on the witness'[s] *actual perception* of events" and "helpful to the jury in understanding those events." *United States v. Offill*, 666 F.3d 168, 177 (4th Cir. 2011) (emphasis added). Rayborn's testimony was not based on any actual perception of events. Rather, her primary conclusions were based on evidence gathered from various witnesses during her investigation.

The district court thus did not abuse its discretion in excluding Rayborn's testimony. First, it would have been based primarily on inadmissible hearsay. Rayborn's conclusions that Terra knew the pressure safety equipment on Tanker 11,500 "had not been maintained during inspections and maintenance" were not based on her own personal knowledge. J.A. 89, *see also* J.A.128. These conclusions, rather, were based on the statements of other actors, including LJC employees. *See, e.g.*, J.A. 91–92, 104, 122, 183, 271–72.

Yet Mathis sought to offer her testimony on these statements for the truth of the matter asserted—that Terra was negligent as it knew of the hazard associated with Tanker 11,500 and failed to properly maintain it. *See Mathis v. Terra Renewal Servs., Inc.*, No. 3:19-cv-00180-RJC, ECF No. 135, at 3–4 (W.D.N.C. July 8, 2021); *see also Anderson v. United States*, 417 U.S. 211, 219 (1974) ("Out-of-court statements constitute hearsay

17

. . . when offered in evidence to prove the truth of the matter asserted."). Under the Federal Rules of Evidence, therefore, Rayborn's testimony was inadmissible for the truth of the matter asserted unless subject to a hearsay exception. *See* Fed. R. Evid. 802. Yet Mathis presents minimal evidence that any such exception applies.

Mathis argued, however, that Rayborn should still have been allowed to testify because she qualified as an expert, and the statements made to her during her investigation are the type generally relied upon by an expert in this field. *See* Fed. R. Evid. 703. But Mathis never attempted to build a serious case for Rayborn's qualifications on the particular topic of tanker pressures independently of what she had managed to gather during the investigation. Furthermore, Mathis never disclosed that Rayborn was being called as an expert. Indeed, he suggested just the opposite: "Mrs. Rayborn is not a retained expert hired by Plaintiff in this matter. Her testimony is based upon the first-hand observations of her investigation." *See Mathis v. Terra Renewal Servs., Inc.*, No. 3:19-cv-00180-RJC, ECF No. 135, at 6 (W.D.N.C. July 8, 2021). We thus fail to see how the trial court erred in disallowing Rayborn to testify as an expert when Mathis did not properly designate her as one.

Finally, the district court did not abuse its discretion in declining to admit under the business records exception to hearsay the full report that Rayborn developed during her investigation. *See* Fed. R. Evid. 803(8)(A)(iii). The report is chock full of statements from LJC employees and others, which the district court reasonably anticipated might pose problems of admissibility. The report repeatedly says that such-and-such says one thing and someone else says another. Many of these statements themselves were hearsay, and

18

the district court rightly refused to accord them a significant role in the trial. *See, e.g.*, *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003).

Furthermore, it is hard to see how Mathis was prejudiced by the exclusion either of Rayborn's testimony about these statements or the portions of her reports containing these statements. He had the option to call witnesses from these reports directly, question them on the relevant events, and impeach them, if needed, using their prior statements from Rayborn's report. *See* Fed. R. Evid. 613. Indeed, Mathis called several employees whom Rayborn interviewed and questioned them on issues covered by her report. *See, e.g.*, 1150–1216; 1274–90.

Overall, the district court's evidentiary rulings fell well within the exercise of its discretion.

## IV.

Mathis last argues that we should overturn the jury's verdict finding him guilty of contributory negligence and thus barring his recovery. Mathis's motion for a new trial, however, did not specifically challenge the jury's verdict on this issue—it instead opted to focus on the district court's decision to grant judgment as a matter of law to Terra and Darling on sudden emergency and gross negligence and its attendant decision not to instruct the jury on these issues. *See Mathis v. Terra Renewal Servs., Inc.*, No. 3:19-cv-00180-RJC, ECF No. 170 (W.D.N.C. July 27, 2021). In all events, sufficient evidence supports the jury's verdict.

In North Carolina, two elements "are necessary to constitute contributory negligence: (1) a want of due care on the part of the plaintiff; and (2) a proximate

19

connection between the plaintiff's negligence and the injury." *Scheffer v. Dalton*, 777 S.E.2d 534, 541 (N.C. App. 2015) (internal quotations omitted). As discussed above, Mathis's actions of climbing on top of a pressurized tanker, bouncing and kicking the manway lid, and failing to monitor the vent hose constitute contributory negligence, for these actions caused the accident.

In sum, there was ample evidence of "a real causal connection between the plaintiff's negligent act and the injury." *Scheffer*, 777 S.E.2d at 541. At several points during the accident, Mathis failed to exercise the "care which a reasonably prudent man would have used under the circumstance." *Diamond*, 191 S.E. at 359. We shall thus uphold the jury's verdict.

## V.

This was at heart a typical tort case involving the most basic tort issues of negligence and contributory negligence. The district judge wisely allowed the trial to focus on these questions and not to skitter off into collateral issues and problematic diversions. The jury did its job; the court did its job; and the judgment is hereby affirmed.

*AFFIRMED*